960 F.2d 152
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Raul N. MORENO, Plaintiff-Appellant,
v.
ALLIED-SIGNAL, INC., et al., Defendant-Appellee.
 No. 90-16800.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 11, 1992.*
Decided April 20, 1992.
 
 Before GOODWIN, FARRIS and POOLE, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 I.
 OVERVIEW
 
 2
 Raul N. Moreno (Moreno), appeals the district court's grant of summary judgment with respect to his claims of wrongful discharge and breach of contract against his former employer. Because we find that Moreno's claims were preempted by ERISA and raise no genuine issue of material fact, we affirm.
 
 II.
 BACKGROUND
 
 3
 Moreno is a former employee of the Garrett Corporation (Garrett) which was subsequently purchased by Allied-Signal, Inc. (Allied). In August, 1985, Moreno stepped on a rock in the Garrett parking lot. The rock pierced the sole of his shoe, became imbedded in his foot, and resulted in his hospitalization.
 
 
 4
 Moreno returned to work following the injury on September 3, 1985. However, his injury interfered with his job performance and he again stopped working on September 5, 1985.
 
 
 5
 Moreno filed a worker's compensation claim and Garrett's worker's compensation attorney informed him by letter of February 11, 1986, that Garrett had accepted his claim but that it was Garrett's policy not to retain employees who were medically disabled for longer than six months. Accordingly, Moreno would be terminated if he did not resume work by March 6, 1986. The letter enclosed forms for Moreno to fill out indicating his condition, whether he would be able to return to work and whether he would be subject to any restrictions. Moreno did not respond.
 
 
 6
 Garrett's employee handbook stated, "Garrett may terminate the employment relationship where it believes it is in the Company's best interest. Neither this handbook nor any other communication by a managerial representative is intended in any way to create a contract of permanent employment."
 
 
 7
 By letter dated March 11, 1986, Claire Akin, Garrett's Benefits Administrator, informed Moreno that because he had not responded to the February 11, 1986, letter, and because his medical leave had expired, he was being terminated from employment as of March 14, 1986. The letter set out Moreno's options regarding early medical retirement and requested that he make an appointment to discuss his options and sign paperwork.
 
 
 8
 On March 25, 1986, Moreno met with Akin. He signed an "Employee Benefit Election" form which listed his termination date as "3-14-86." In his deposition, Moreno stated that Akin told him at this meeting that he would remain on disability leave of absence until he recovered, at which time he could return to work.
 
 
 9
 Subsequently, Akin applied on Moreno's behalf to Garrett's Retirement Plan Committee seeking approval of medical disability retirement. However, by letter dated September 12, 1986, Akin notified Moreno that his disability retirement had been disapproved based on statements by his doctors that his disability was not considered to be total and permanent. The letter explained that Moreno was left with two options: termination and deferred access to retirement benefits, or early retirement effective March, 1986.
 
 
 10
 On September 26, 1986, Akin wrote Moreno enclosing for his consideration a final calculation of his retirement benefits and requesting him to choose between retirement, which would entitle him to continuing medical benefits and immediate access to his pension, or termination, which would provide deferred access to his pension and no medical coverage. Moreno did not respond.
 
 
 11
 On December 2, 1986, Akin advised Moreno by letter that he must decide on his retirement options by December 23, 1986, and that if he did not respond by that date, Garrett would assume that he did not want early retirement.
 
 
 12
 On December 20, 1986, Moreno wrote Akin stating that he would accept his retirement benefits "under protest and duress." However, he did not fill out the forms necessary to effectuate a retirement.
 
 
 13
 On April 1, 1987, Akin wrote Moreno advising him that unless he returned the necessary forms and documents by April 20, 1987, Garrett would conclude that he was unwilling to complete his retirement election. Moreno did not respond.
 
 
 14
 On July 22, 1987, Charles Leinbach, Secretary of Garrett's Retirement Plan Committee, wrote to Moreno and gave him a deadline of two weeks from receipt of the letter to complete the forms necessary to implement retirement, otherwise Moreno would be deemed to have chosen to defer his pension and be terminated effective March of 1986. Moreno did not respond.
 
 
 15
 Moreno's status at Garrett was adjusted to reflect termination and his medical and dental benefits were terminated effective December, 1987.
 
 
 16
 On March 11, 1988, Moreno sued in state court alleging seven causes of action: (1) wrongful termination in violation of public policy embodied in the Arizona Worker's Compensation Act, A.R.S. § 2301022; (2) breach of alleged employment contract; (3) breach of the implied covenant of good faith and fair dealing; (4) tortious interference with contract; (5) intentional infliction of emotional distress; (6) fraud and reckless misrepresentation; and (7) negligent misrepresentation. The gist of Moreno's complaint was that Garrett tried to force him to retire early after he had been on leave for six months, that when he refused he was terminated, and thus denied his medical and dental benefits and the continuing accrual of years of service for his pension benefits plan.
 
 
 17
 Allied removed this action to the U.S. District Court for the District of Arizona based on federal question jurisdiction arising under the Employee Retirement Income Security Act of 1974 (ERISA). Allied then moved for summary judgment on all claims and the district court granted the motion. Moreno now appeals with respect to his claims of wrongful discharge and breach of contract.
 
 III.
 STANDARD OF REVIEW
 
 18
 We review de novo the district court's grant of summary judgment. T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 629-630 (9th Cir.1987). Viewing the evidence in the light most favorable to the nonmoving party, we look to see whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Cas. Co., 873 F.2d 1338, 1339-1340 (9th Cir.1989).
 
 IV.
 DISCUSSION
 A. MORENO'S CLAIMS WERE PREEMPTED BY ERISA
 
 19
 Section 514(a) of ERISA provides that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). This preemption clause is "deliberately expansive, and is designed to establish pension plan regulation as exclusively a federal concern." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46 (1987). Thus, "the phrase 'relate to' [is] given its broad common sense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." Id. at 47.
 
 
 20
 Moreno claims that in retaliation for filing a worker's compensation claim Garrett terminated him, attempted to force him into early retirement, and unlawfully deprived him of his health and dental benefits and his continuing accrual under the pension plan. Moreno does not complain about the loss of his employment in itself--he concedes he has been unable to work since his injury. Instead, he complains that he has been denied the benefits of his employment. Accordingly, Moreno's claims fall within the purview of the exclusive remedy provisions in ERISA and are preempted.
 
 
 21
 Moreno's characterization of his claims as based upon Garrett's violation of a supposed unwritten "payroll practice," that is somehow not subject to ERISA, does not help him. No matter how he styles his complaint, the underlying theory of Moreno's case revolves around the denial of benefits. Thus, summary judgment as to both claims was proper.
 
 B. WRONGFUL TERMINATION
 
 22
 Moreno asserts that a genuine issue of material fact exists as to whether his discharge was in retaliation for filing a workers' compensation claim and therefore a violation of public policy. We disagree.
 
 
 23
 "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact ... the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts ' showing that there is a genuine issue for trial." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir.1987).
 
 
 24
 In support of its motion for summary judgment, Allied provided the affidavit of its Manager of Benefits who stated that Garrett's uniform policy was to grant leaves of absence necessitated by employee injury for a maximum duration of six months. Allied cited the series of correspondence between Garrett representatives and Moreno as evidence that he was terminated pursuant to this policy and not in retaliation for his worker's compensation claim.
 
 
 25
 In his response, Moreno (who bears the burden of proof on this issue, see Douglas v. Wilson, 774 P.2d 1356 (Ariz.Ct.App.1989)) asserted only his belief that his termination was retaliatory. This is insufficient. Moreno's arguments on appeal, that the "unwritten, unpublished" nature of Garrett's medical leave policy and the timing of his termination demonstrate retaliatory termination, are unsubstantiated speculation and do not rise to the level of proof necessary to overcome a motion for summary judgment. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), cert. denied, 481 U.S. 1029 (1987).
 
 
 26
 Summary judgment as to this claim was proper.
 
 C. BREACH OF CONTRACT
 
 27
 There is no merit to Moreno's claim that his termination was a breach of contract.
 
 
 28
 Garrett's employee handbook states expressly that employment with Garrett was at-will, and that this at-will status could not be modified by a managerial representative. Thus, Moreno's argument, that Akin's alleged promise of an indefinite paid disability leave created an implied contract of employment, is unsound.
 
 
 29
 Garrett demonstrated Moreno's at-will employment status, produced uncontradicted evidence that it had no policy of granting indefinite medical leaves, and produced evidence that Moreno acknowledged his termination, by signing a document, on the very day when he now alleges he was promised an indefinite paid leave of absence. All that Moreno offers to oppose this showing is his unsupported assertion of Akin's promise. Therefore, summary judgment was proper on this claim.
 
 
 30
 AFFIRMED.
 
 
 
 *
 Pursuant to Ninth Circuit Rule 34-4, the panel unanimously finds this case suitable for disposition without oral argument
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3