774 P.2d 1356

**Phyllis Adele DOUGLAS, Plaintiff/Appellant,**

**v.**

**Richard R. WILSON, in his capacity as Director of Court Services, Pima County Juvenile Court, Defendant/Appellee.**

**No. 2 CA–CV 88–0359.**

Court of Appeals of Arizona, Division 2, Department B.

May 25, 1989.

Howard Baldwin, Tucson, for plaintiff/appellant.

Robert K. Corbin, Atty. Gen. by Sarah A. Bailey, Ronald J. Greenhalgh and William V. Hornung, Tucson, for defendant/appellee.

## OPINION

FERNANDEZ, Judge.

Appellant Adele Douglas appeals from the trial court's granting of summary judgment in favor of appellee Richard Wilson, the Director of Court Services at Pima County Juvenile Court, in her suit for violation of civil rights, wrongful discharge and breach of employment contract. Douglas contends that she presented a prima facie case and that material facts are in dispute, precluding entry of summary judgment. We agree as to her wrongful discharge claim and reverse on that count.

Douglas, who is black, worked at Pima County Juvenile Court from April through early June 1986 under a county temporary service program. On June 9 she was hired by the Juvenile Court as a file clerk. She then began a six-month probationary period which was to end December 6, 1986. Sometime in June, she was married but did not change her name or inform her co-workers of the marriage. Shortly after, she became pregnant. She contends that after her pregnancy began to show some-

time in October, there were discussions and comments from her co-workers who believed she was unmarried.

On November 13, 1986, she met with her immediate supervisor Jackie Griffin and was told there were problems with her performance on the job. Griffin told her they would meet again in a week and gave Douglas a list of several jobs with deadlines she was to meet by November 28. On November 17, Douglas injured her back at work and was unable to work for several weeks. She subsequently filed a workers' compensation claim for the injury. On November 21, Douglas' probationary period was extended for 90 days. In early December Douglas' doctor released her for light duty work. Douglas notified Griffin of that fact but was told there was no light duty work available. She never returned to work at the court. Instead, on December 22, she was terminated. The reason given for the termination was job performance problems.

Douglas filed suit in April 1987 against Wilson, Pima County and the Board of Supervisors. The county and the board of supervisors were dismissed from the suit after they filed a summary judgment motion. Wilson filed a summary judgment motion in July 1988, which was granted in August 1988. This appeal followed.

## VIOLATION OF CIVIL RIGHTS CLAIM

■ Douglas' first cause of action alleges violation of her civil rights in relation to her sex, racial origin and condition of pregnancy under both Arizona law and under 42 U.S.C. § 1983. She contends that she has established a prima facie case of discrimination. Wilson contends that because he submitted an affidavit in which he denied any discriminatory motives in discharging Douglas, she is now required to prove that his non-discriminatory explanation was pretextual, citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Wilson argues that Douglas has failed to carry that burden.

In the cases that have followed *Burdine*, the courts have indicated that the evidence establishing a prima facie case of discrimination may also be used to establish that the defendant's explanation is pretextual. *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727 (9th Cir.1986); *Lowe v. City of Monrovia*, 775 F.2d 998 (9th Cir.1985). Both those cases involved appeals from the granting of summary judgment in favor of the defendants; in both, the courts found that factual issues existed so as to preclude entry of summary judgment. In both, however, the facts were far different than what Douglas has shown here. In *Miller*, two black women had filed race discrimination charges with the Equal Employment Opportunity Commission. Their employer subsequently entered into agreements with them to provide training programs in exchange for their dropping of the charges. Less than two months later, both women were laid off. In *Lowe*, a black woman who had passed the written and oral examinations for an entry-level police officer vacancy was told that the city had no blacks and no women and that she should apply in another city where the police department was " 'literally begging for minorities and especially females.' " 775 F.2d at 1002–03.

In this case, on the other hand, Douglas has produced little evidence to support her claim of prejudice. Much of her testimony revolved around her complaint that her co-workers would not invite her to lunch and that one of them was her supervisor's "pet." She has offered nothing else to support her claim of discrimination other than the fact that she is black, female and was pregnant at the time she was terminated. We agree with the trial court that Wilson was entitled to summary judgment on Douglas' cause of action for violation of her civil rights.

## BREACH OF EMPLOYMENT CONTRACT

■ Douglas' third cause of action is for breach of an implied covenant of good faith and fair dealing. She contends that a fact issue exists concerning whether she was a probationary or permanent employee at the time she was terminated. She also contends there are fact issues as to the exact terms of the employment contract, such as, whether the Juvenile Court policies were part of the contract, whether the fact that she was given deadlines for improving her performance became part of the contract, and whether the extension of her probation period altered the terms of the contract.

We need not address those issues, however. Our supreme court in *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (1985), made it clear that a claim for breach of an implied covenant of good faith and fair dealing will not lie if it involves only a claim for prospective employment. Even if Douglas was a permanent employee at the time of the termination, she had no promise of continued employment. Because she makes no claim for failure to pay any earned benefits, we find that the trial court correctly granted summary judgment on Douglas' cause of action for breach of her employment contract.

## WRONGFUL DISCHARGE CLAIM

■ Douglas' second cause of action alleges that at the time she was terminated, she was disabled from a work-related injury and was pregnant. She alleges that while she was disabled, appellee caused her probation to be extended and then terminated her either because she was pregnant or because she had filed a workers' compensation claim.

In his affidavit attached to his summary judgment motion, Wilson stated that he decided to terminate Douglas because of her poor job performance and that his decision was not based on her race, her gender, her condition of pregnancy or the fact that she had filed a claim for workers' compensation. On appeal, Wilson contends that Douglas has failed to establish a causal relationship between the condition or circumstances and her termination, citing *Wagner v. City of Globe*, 150 Ariz. 82, 722 P.2d 250 (1986).

■ Although no Arizona case has specifically held that the termination of an

at-will employee in retaliation for filing a workers' compensation claim can serve as the basis of a cause of action for wrongful discharge, our supreme court has strongly implied that that is the case. *Wagner; Wagenseller; Leikvold v. Valley View Community Hospital,* 141 Ariz. 544, 688 P.2d 170 (1984). Accordingly, we conclude that it can.

Because this is an appeal from the granting of summary judgment, we assume that Douglas' allegations are true. *Gulf Insurance Co. v. Grisham,* 126 Ariz. 123, 613 P.2d 283 (1980). In response to Wilson's summary judgment motion, Douglas produced deposition testimony that showed that on November 13 her supervisor gave her a list of duties she was to perform in order to successfully complete probation and that Douglas was to meet with her supervisor again in "about a week." According to Wilson, Douglas was given written notice that the deadlines were to be met by November 28. Douglas testified she did not receive that written notice until sometime in December. In any event, four days after she met with her supervisor, Douglas was injured. She never returned to work.

Wilson testified that on November 21 he signed two documents: one was a leave of absence for Douglas because of her industrial injury, and the other was a request to the presiding judge of the Juvenile Court to extend Douglas' probation by an additional 90 days, the maximum extension that could be granted under the Juvenile Court merit system rules. According to the rules, extensions of probation are to be granted for good reason. No reason was given for the extension Wilson obtained here.

In early December Douglas notified her supervisor that her doctor had released her for light duty work. At that time she was given the notice that her probation, originally scheduled to terminate December 6, had been extended 90 days. Douglas told her supervisor that she could continue to perform her job if there were some modifications with regard to lifting heavy objects. Her supervisor responded that no light duty jobs were available. Douglas testi-fied that she subsequently renewed her request to be permitted to return to work and that she also discussed her request with her supervisor's supervisor and with the court personnel officer.

Despite her requests, she was never given any light duty work. She contends that court rules provide that if the court has no light duty work available, the supervisor is to contact the county personnel director for a light-duty position in the rest of the county system. Douglas' supervisor testified she never inquired whether light-duty work was available elsewhere in the county. On December 24 Douglas received her termination notice dated December 22. Wilson testified that he terminated Douglas because of "feedback" he had subsequently received from several people about Douglas' job performance. None of the documents discussed is contained in the record on appeal.

Summary judgment is inappropriate when there is the slightest doubt about the facts of the case. *Peterson v. Valley National Bank,* 90 Ariz. 361, 368 P.2d 317 (1962). Even when the facts are not in dispute, it is improper to grant summary judgment if there are conflicts in the inferences that can be drawn from those facts. *Northern Contracting Co. v. Allis–Chalmers Corp.,* 117 Ariz. 374, 573 P.2d 65 (1977). Summary judgment is particularly inappropriate when one of the issues raised involves a person's intent or motives. *Hay v. Duskin,* 9 Ariz.App. 599, 455 P.2d 281 (1969).

Considering the timing of events in this case—the fact that Douglas never returned to work after her injury, that she was never offered light-duty work, that she never had an opportunity to meet the deadline she was given on November 13, that her probation was extended the same day Wilson signed the leave of absence because of her industrial injury, and that she was then terminated because of unspecified subsequent "feedback" on her job performance without ever having returned to work—we find that Douglas has raised a factual issue with regard to her tort claim

of wrongful discharge and that summary judgment on that issue was improper.

Because this is a pendente lite appeal, Douglas' request for attorney's fees is deferred. The summary judgment is affirmed as to the first and third causes of action. The judgment on the second cause of action is reversed, and the case is remanded for trial on that count.

LACAGNINA, C.J., and ROLL, P.J., concur.