927 P.2d 781

**Jason THOMPSON and Alia Thompson, husband and wife, Plaintiffs–Appellants,**

v.

**BETTER–BILT ALUMINUM PRODUCTS COMPANY, INC., a foreign corporation, Defendant–Appellee.**

**No. 1 CA–CV 94–0298.**

Court of Appeals of Arizona, Division 1, Department B.

March 28, 1996.

As Corrected April 8, 1996.

Reconsideration Denied May 1, 1996.

Review Denied Nov. 19, 1996.

Law Offices of Charles Anthony Shaw by Charles Anthony Shaw, Prescott, for Plaintiffs–Appellants.

Musgrove, Drutz & Kack, P.C. by James B. Musgrove, Mark W. Drutz and Grant K. McGregor, Prescott, for Defendant–Appellee.

## OPINION

THOMPSON, Presiding Judge.

Plaintiffs Jason and Alia Thompson appeal the verdict in favor of defendant Better–Bilt Aluminum Products Company, Inc. (Better–Bilt). The central issues presented are whether the trial court erred in dismissing the Thompsons' negligence and breach of contract claims, admitting after-acquired evidence of employee misconduct, instructing the jury on proof required in a wrongful discharge claim, and presenting the jury with special interrogatories. For the following reasons, we affirm.

## FACTS

On or about April 8, 1981, Jason Thompson (Thompson) began working at Better–Bilt's plant in Prescott Valley, Arizona. From June 1981 through January 1985, Thompson filed six workers' compensation claims for injuries sustained while working for Better–Bilt. Although five of the injuries were relatively minor, some not requiring absence from work, Thompson's first injury, the amputation of his left index finger, left him with a twenty-five percent impairment to his left hand.

On October 29, 1984, Thompson was terminated for excessive absenteeism and tardiness, but was reinstated the next day after he reassured the general manager that he would not be late again. In May of 1985 Thompson filed a seventh workers' compensation claim for a back injury. Thompson returned to work on July 13 but went back on industrial leave on July 19 due to his injury.

Thompson received a letter from Better–Bilt Personnel Director Richard L. Bonney

dated August 29, 1985, advising Thompson that he would be terminated if he did not report to Better–Bilt by September 4. The letter stated that employees on injury leave were required to "call in" each Wednesday and report their conditions and progress. Although it is unknown whether "calling in" was a formal Better–Bilt policy, Thompson was not terminated when he missed the September 4 deadline by one day.

Sometime between September 27 and October 6, Thompson chanced to meet Susie Dale, Better–Bilt's personnel assistant, at a Safeway grocery store. Dale later recalled that during their short, cordial conversation Thompson told her, "You know, I'll probably never be able to return to that type of work again." Dale conceded that Thompson never told her he was quitting his job at Better–Bilt and Dale did not ask Thompson to clarify his statement.

Within the next week, Dale told Bonney about her conversation with Thompson and Bonney directed Dale to document the conversation and prepare paperwork delineating Thompson as a "voluntary resignation." Bonney then called Better–Bilt's labor attorney who advised Bonney that Thompson had voluntarily quit. Thompson's termination was made effective October 1, 1985. At the time, Better–Bilt personnel management did not have a policy in place for notifying employees of voluntary termination decisions, believing it made for unnecessary paperwork. Thompson continued to call Better–Bilt after October 1 but was never apprised of his termination. On October 30, he received a birthday card from Better–Bilt.

On October 25 Alia Thompson (Alia) was hospitalized for surgery relating to a tubal pregnancy. The expenses totaled $5,264.00. Thompson went to Better–Bilt on November 4 to fill out an insurance form for the expenses, Alia having been covered on his employee insurance plan. He was informed by Dale that his coverage had been terminated because he had quit as of October 1. Thompson protested that he hadn't meant to imply that he was quitting his job during the Safeway conversation. He was unable to convert his Better–Bilt group insurance to a private plan because, pursuant to conversion policy, over thirty-one days had elapsed since the termination of his employee plan.

## PROCEDURAL HISTORY

### The First Trial

In an amended complaint filed on September 11, 1986, Thompson alleged the following causes of action against Better–Bilt:

1. negligent, intentional, and fraudulent concealment of his termination;

2. intentional interference with his contractual relationship with Better–Bilt's insurance company;

3. wrongful termination in violation of public policy for filing a workmen's compensation claim;

4. breach of employment contract by terminating for other than good cause and for not informing him of his termination date;

5. breach of the covenant of good faith and fair dealing by considering him terminated without first giving him notification.

The trial court granted directed verdicts for Better–Bilt on the intentional interference with contract claim and on Thompson's request for punitive damages. Additionally, before the case went to the jury, the court dismissed the counts alleging concealment of the termination and breach of the covenant of good faith and fair dealing. As a result, only the breach of employment contract and wrongful termination claims were submitted to the jury. The jury returned a verdict for Thompson on the wrongful termination claim, assessing damages at $15,700.00, but did not make a finding on the breach of contract claim.

Better–Bilt appealed the giving of a jury instruction on negligent discharge and the court of appeals agreed that the instruction was improper, although it clarified that Thompson could have stated a simple negligence claim based on the manner of his termination. The court also found error in allowing the jury to have considered Alia Thompson's damages, finding that Better–Bilt owed her no duty. Finally, the court held the trial court erred in awarding treble

damages to Thompson for unpaid bonus and vacation pay, but that Thompson's attorneys' fees award would be proper if he prevailed on retrial.

On cross-appeal by Thompson, the court of appeals reversed the trial court's decision denying videotaping costs to Thompson but upheld the trial court's denial of punitive damages. The court noted that Thompson did not raise the dismissal of his good faith claim on appeal. *Thompson v. Better–Bilt,* No. 1 CA–CV 88–436 (Ct.App. Dec. 4, 1990).

Thompson subsequently sought review by our supreme court.[1] The court granted review on the issues of Alia's medical expenses and punitive damages. Acknowledging that the case had been correctly remanded, the supreme court determined that the court of appeals had erred in holding that Thompson could not recover damages for Alia's medical expenses and determined that the award of punitive damages was an issue for the jury if Thompson could show that Better–Bilt acted with actual malice.

*The Second Trial*

On remand, the trial court granted Better–Bilt's motion in limine, precluding Thompson from presenting evidence on any claim but wrongful termination. The court then denied Thompson's motion in limine requesting preclusion of defendant's after-acquired evidence defense that Thompson falsified information on his employment application. During the trial, Better–Bilt introduced evidence that it had not terminated Thompson despite technically having had opportunities to do so throughout the time of his employ. Better–Bilt also introduced evidence that on his employment application Thompson had failed to inform the company about a former employer and about his prior workers' compensation history.

The trial court submitted special interrogatories to the jury instructing it to make a finding as to whether Thompson made a material misstatement of fact on his employment application and, if so, whether Better–Bilt would have fired Thompson had it learned of the misstatement during Thomp-son's employment. The jury was instructed that if it gave affirmative answers to both questions, the court would decide whether the after-acquired evidence would bar or reduce any recovery awarded Thompson. On December 3, 1993, the jury returned its verdict in favor of Better–Bilt. The jury did not answer the special interrogatories. Thompson's motion for new trial was denied.

Thompson appeals and we have jurisdiction pursuant to Ariz.Stat.Ann. (A.R.S.) §§ 12–2101(B) and (F)(1).

**DISCUSSION**

Thompson presents the following issues for review:

1. whether the trial court erred in precluding evidence on Thompson's negligent concealment and breach of contract claims;

2. whether the trial court erred in instructing the jury on the burden of proof required to show wrongful discharge or on the "legitimate business reason" defense;

3. whether the trial court erred in allowing Better–Bilt to bring its after-acquired evidence defense by admitting evidence of Thompson's employee misconduct;

4. whether the trial court erred in submitting special interrogatories to the jury;

5. whether Thompson is entitled to attorneys' fees on appeal.

*Negligent Concealment and Breach of Contract Claims*

In its minute entry of February 22, 1993, the trial court ordered that the issue in the case was wrongful termination. Thompson complains that this ruling erroneously precluded his claims of negligent concealment and breach of contract as raised in his amended complaint in the first action. However, the negligent concealment claim was summarily dismissed before the first trial, and Thompson did not appeal that dismissal at the time of the first appeal. Further, in the first trial, the jury did not return a verdict on the breach of contract claim. Thompson failed to seek relief from the trial court regarding the lack of a verdict and did

1. *Thompson v. Better–Bilt Alum. Products Co., Inc.,* 171 Ariz. 550, 832 P.2d 203 (1992).

not challenge any of the jury's determinations in his first appeal. Both parties, and the trial judge, treated these claims as abandoned in the course of the first appeal.

▪ Preliminarily, our general practice is that we will not consider on second appeal a matter which could and should have been raised on first appeal. *Paramount Pictures, Inc. v. Holmes,* 58 Ariz. 1, 4, 117 P.2d 90, 91 (1941). Without more, we deem Thompson's two unraised issues affirmed on first appeal. *Arizona–Parral Mining Co. v. Forbes,* 16 Ariz. 395, 402, 146 P. 504, 506 (1915). Thompson insists, however, that because Better–Bilt appealed the "entire" judgment, Better–Bilt reopened the negligence and contract issues. In fact, the judgment does not address the issues of negligence or breach of contract—it only rules upon the wrongful termination issue. Moreover, it would be nonsensical to infer that Better–Bilt "appealed" issues upon which it had already prevailed. A party aggrieved by only part of a judgment can only appeal that part adversely affecting him. *Grim v. Anheuser–Busch, Inc.,* 154 Ariz. 66, 72, 740 P.2d 487, 493 (App.1987).

▪ Thompson asserts that the negligence issue was addressed and approved on appeal even though he did not formally raise the issue. Although the first memorandum decision outlined a scenario in which Thompson "could" have stated a negligence claim "for the way he was 'voluntarily terminated,'" Thompson's negligent concealment claim was not itself on review; the scenario was used only to illustrate the distinction between negligence and wrongful termination claims.

Thompson quotes *Quern v. Jordan,* 440 U.S. 332, 348 n. 18, 99 S.Ct. 1139, 1149 n. 18, 59 L.Ed.2d 358 (1979), for the proposition that circuit courts may consider matters "left open" by the United States Supreme Court. He additionally directs us to § 1989 of 5B C.J.S. *Appeal and Error,* p. 634–36 (1950), which states, "If the appeal is taken ... a reversal and remand for a new trial, *without any limitations or issues being specified,* is usually held to vacate completely the judgment...." (Emphasis supplied.) We do not find that the contract and negligence issues were "left open" in the memorandum deci-

sion. The memorandum decision specifically identified the issues before it and distinguished its reasons for remanding—improper jury instructions and inaccurately calculated damages *on the issue of wrongful termination.* In closing, the decision stated, "We therefore reverse and remand for further proceedings *in conformance with this decision.*" (Emphasis supplied.) The supreme court stated that it had "granted review to address the standards for recovering consequential and punitive damages in this *wrongful termination* case." 171 Ariz. at 550, 832 P.2d at 204. (Emphasis supplied.) Therefore, we believe both reviewing courts had before them discrete issues which they identified and ruled on and we find no error in precluding evidence of the unraised issues on remand.

## Jury Instructions

▪ On review, jury instructions are read as a whole with an eye toward determining whether the jury was given the proper rules of law to apply in arriving at its decision. *Durnin v. Karber Air Conditioning Co.,* 161 Ariz. 416, 419, 778 P.2d 1312, 1315 (App.1989). If an instruction is misleading to the jury and prejudices the appellant's rights, the giving of that instruction constitutes reversible error. *Noland v. Wootan,* 102 Ariz. 192, 194, 427 P.2d 143, 145 (1967). However, a jury verdict will not be overturned as a result of improper jury instructions unless there is substantial doubt as to whether the jury was properly guided in its deliberations. *Catchings v. City of Glendale,* 154 Ariz. 420, 424, 743 P.2d 400, 404 (App.1987).

## Standard of Proof

▪ In the second trial, the court gave the following instructions to the jury:

[ ]A party who has the burden of proof must persuade you by the evidence that the claim is more probably true than not true. In other words, the evidence supporting a proposition that a party has the burden of proving must outweigh the evidence opposed to it. In determining whether a party has met this burden, you

will consider all the evidence, whether produced by plaintiff or defendant.

. . . . .

In order to prevail on his cause of action for wrongful discharge in violation of public policy, Jason Thompson ... must prove ... that he was terminated because he had filed a worker's compensation claim; and ... that the termination was a substantial factor in bringing about harm to the plaintiffs.

At the jury instruction conference, Thompson requested that the latter instruction be read to state that filing of a claim was a *substantial factor* in Better–Bilt's decision to terminate him. He argued that, otherwise, it would appear to the jury that filing a claim would have to be the *sole* motivating factor for the termination, rather than only a substantial one.

■ Termination in retaliation for filing a workers' compensation claim can serve as the basis for a cause of action for wrongful discharge. *Douglas v. Wilson,* 160 Ariz. 566, 568–69, 774 P.2d 1356, 1358–59 (App.1989). However, Arizona appellate courts have not been explicit on the burden of proof required in such cases. Nevertheless, we agree with the analysis in *Borden, Inc. v. Guerra,* 860 S.W.2d 515, 522 n. 3 (Tex.App.1993), which maintains that asking a jury whether a plaintiff is fired "because" he filed a claim is not tantamount to asking a jury whether the plaintiff was fired "solely" because he filed a claim.

Taken together, the two instructions above notified the jury that in order to prevail, Thompson must prove the proposition that he was fired because he filed a claim, *more probably than not.* The instructions did not require more proof than Thompson asserted should be required, the law was not misstated, and Thompson was not prejudiced. In fact, as the trial court noted at the conference, because filing was the *only* reason Thompson alleged for his termination, we find the court's instruction clarifying rather than misleading.

*Legitimate Business Reason*

■ Over Thompson's objection, the court gave the following "legitimate business reason" instruction:

An employer who acts in good faith on an honest but mistaken belief that discharge of an employee is justified, has not violated public policy.

You have heard evidence regarding employees *other than Jason Thompson* who have been terminated by Better–Bilt. In considering *this* evidence, an employer who terminates an employee on the basis of a legitimate business reason has not violated public policy. A legitimate business reason is one that is rationally related to a lawful business purpose.

(Emphasis supplied.) Thompson argues that the instruction allows the jury to find for Better–Bilt if it believed Better–Bilt articulated any legitimate business reason for firing Thompson, whether or not it was a substantial factor in the firing and whether or not it was a pretext. The court allowed the instruction because Better–Bilt's claim was that it had not terminated Thompson and had believed, in good faith, that he had quit. The business reason instruction was not meant to apply to Thompson's "termination" at all, but to other employee terminations placed into evidence by Thompson. At trial, Better–Bilt claimed that these prior terminations were not made as part of a "policy" to terminate workers who had filed compensation claims, but for lawful business purposes.

We do not find the instruction misleading in light of the facts presented at trial and taken in context with the aforementioned instructions. *See Walker v. A T & T Technologies,* 995 F.2d 846, 849–50 (8th Cir.1993) (employer entitled to instruction regarding right to make business decisions absent intentional discrimination). The three instructions, read together, notify the jury that if it believed that it is more probable than not that Better–Bilt fired Thompson because he had filed a workers' compensation claim, it should find for Thompson, because such a firing is in violation of public policy. The instructions also inform the jury, however, that when an employee who has filed a claim

is fired, it does not mean, *per se,* that he has been fired in violation of public policy—he may have been fired for legitimate business reasons. We find no reversible error in the instructions.

*Admission of After–Acquired Evidence*

 The admission of evidence will not be disturbed on appeal unless a clear abuse of discretion appears and prejudice results. *Selby v. Savard,* 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982). Thompson asserts that it was error for the trial court on remand to allow Better–Bilt's after-acquired evidence defense of employee misconduct by Thompson, who had falsified information on his employee application. Thompson's contention is that allowing evidence of employee application fraud in public policy tort cases undermines the purpose and effect of case law and anti-discrimination statutes. Thompson further argues, following the holding in *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), that, because the jury in the second trial was not asked to award front pay damages or reinstatement, the after-acquired evidence could not have barred any of the relief sought by Thompson and thus was inadmissible and prejudicial.

There appears to be no present Arizona authority on the issue whether after-acquired evidence of application fraud is admissible in defense of a claim of wrongful termination for filing a workers' compensation claim. In *Summers v. State Farm Mut. Auto. Ins. Co.,* 864 F.2d 700, 708 (10th Cir.1988), *overruled in part by McKennon,* 513 U.S. at ——, ——, 115 S.Ct. at 883, 885, the Tenth Circuit held that after-acquired evidence of serious employee misconduct may be used to bar relief for an allegedly unlawful firing. The circuit court, citing to *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), reasoned that to require reinstatement notwithstanding the employee's misconduct would "place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing." 864 F.2d at 705.

In *O'Day v. McDonnell Douglas Helicopter Co.,* 784 F.Supp. 1466, 1468 (D.Ariz.1992), the United States District Court stated that after-acquired evidence of employee misconduct may preclude employee relief in discrimination cases if the employer can prove that the employee would have been discharged immediately upon the employer's discovery of the misconduct. The court reasoned that such evidence would be relevant in determining whether the employee had been injured by the discrimination, a potential question of fact for the jury. *Id.* at 1469. The decision in *Conlin v. Mission Foods Corp.,* 850 F.Supp. 856, 860 (N.D.Cal.1994) restates the purpose of the after-acquired evidence doctrine as "not ... to protect employers from poor hiring decisions ... [but] to grant them some relief from their discriminatory acts when their initial decision was premised on false information submitted by an applicant." Finally, the United States Supreme Court in *McKennon,* making allowance for employers' "prerogatives and discretions in the course of the hiring, promoting, and discharging of their employees," held that after-acquired evidence could not bar relief under the Age Discrimination in Employment Act but could limit damages, generally rendering reinstatement and front pay inappropriate. 513 U.S. at ——, 115 S.Ct. at 885–86. Although Thompson suggests that *Graf v. Wire Rope Corp. of Am.,* 861 S.W.2d 588, 591 (Mo.App.1993), holds that extrinsic evidence may not be used to support an after-acquired evidence defense, the memorandum on rehearing in that case specifically clarified that the issue of after-acquired evidence had not been before the court on appeal because the employer had not raised the defense in its answer and had not produced evidence that it would have discharged the employee upon learning of the application fraud. In the instant case, Better–Bilt raised the after-acquired evidence defense in its answer, introduced extrinsic evidence at trial showing application fraud by Thompson, and testified that Thompson would have been fired had the inconsistencies surfaced at any time during his employ.[2] For these reasons,

---

**2.** Bonney testified that the purpose for inquiring into compensation claim history was to ascertain

we do not find the holding in *Graf* instructive to our inquiry here.

In *Mosley v. Truckstops Corp. of Am.*, 891 P.2d 577 (Okla.1993), the Oklahoma Supreme Court distinguished *Summers,* declining to extend its rationale beyond the context of civil rights employment discrimination violations. The court found that applying a *Summers* instruction to workers' compensation claims was reversible error and violated public policy because it would allow employers to circumvent the established workers' compensation structure and would distract the jury from deciding the real issue of the case—the retaliatory motive of the employee's termination. *Id.* at 582–84.

Although we agree with *Mosley* to the extent that we believe retaliatory discharge of an employee for filing a workers' compensation claim should be prohibited, we conclude that this public policy does not preclude an employer from presenting after-acquired evidence of application fraud when the jury is instructed as to the significance of such evidence on the measure of damages. Based on the policies enunciated in *Summers* and *McKennon,* we conclude that a jury could find, for the purpose of establishing the measure of harm suffered from wrongful termination, that application fraud was so serious that the employee would never have been hired, had the fraud been discovered at the time of the application.

■■■ We next turn to Thompson's claim that *McKennon* establishes the impropriety of the trial court's admission of the after-acquired evidence, because Thompson did not seek reinstatement or front pay in the second trial. The retrial proceeded on Thompson's first amended complaint, which expressly sought reinstatement in the prayer for relief. It appears that the claim for reinstatement was abandoned at some point in the proceedings, because such a claim was not mentioned during the course of the second trial. We assume for purposes of our decision here that the claim for reinstatement was abandoned at the time that the appellee presented its

an employee's health limitations and to help account for unemployment gaps in an employee's

after-acquired evidence of Thompson's misstatements on his application.

While Thompson objected throughout pretrial proceedings to the injection of the after-acquired evidence defense into the retrial on his claims, the distinction recognized in *McKennon* based on the remedy sought was never presented to the trial court. Thompson never asserted in the trial court that, because he was no longer seeking reinstatement and was not requesting front pay, the after-acquired evidence could not bar any remedy he did seek. We can discern no point in the proceedings at which the trial judge was advised that the abandonment of Thompson's claim for reinstatement had any impact on the admissibility of the after-acquired evidence.

■■■ To preserve a claim of error in the admission of evidence, the objecting party must make a timely and specific objection. Ariz.R.Evid. 103. The purpose of the rule requiring that the specific grounds of an objection be stated is to allow the adverse party to obviate the objection and to permit the trial court to intelligently rule on the objection and avoid error. *Packard v. Reidhead,* 22 Ariz.App. 420, 423, 528 P.2d 171, 174 (1974). Because Thompson never argued that his choice of remedies meant that the after-acquired evidence could not be admitted, and never allowed the trial judge the opportunity to discern an exception to the *Summers* doctrine where neither front pay nor reinstatement are sought, Thompson cannot argue that now. *See City of Yuma v. Evans,* 85 Ariz. 229, 236, 336 P.2d 135, 139–40 (1959) (because grounds urged on appeal for impropriety of question asked at trial were not grounds upon which appellant based his objection to the court below, appellant could not seek a reversal.)

We also note that the jury in the second trial did not return a verdict on whether Thompson had been rightfully hired because it found that he had not been wrongfully terminated. Thompson argues that the application fraud evidence prejudiced the jury in making this threshold determination.

work history.

However, based upon the record before us which demonstrates that the trial court carefully instructed the jury on the weight it should give such evidence, we do not believe the admission of the evidence amounted to a clear abuse of discretion on the trial court's part or that prejudice in fact resulted.

*Special Interrogatories*

■ At the close of trial, the court instructed the jury on wrongful termination and then addressed the after-acquired evidence issue as follows:

> ... [Y]ou use this interrogatory in connection with the after acquired evidence defense.
>
> Defendant claims and must prove the after acquired evidence defense. An employer may use after acquired evidence of an employee's material misstatement of fact on an employment application in defense of a suit for wrongful termination.
>
> The term after acquired evidence means evidence that was not discovered by the employer until after the employee's employment was terminated.
>
> Defendant claims it would have had the right to terminate Jason Thompson for a material misstatement of fact on his application for employment. A misstatement of fact is material if it is important and would have resulted in Jason Thompson's immediate termination had Better–Bilt known of it during his employment.
>
> Ladies and gentlemen, you're going to be given two questions to answer. First question: Did Jason Thompson make a material misstatement of fact in his employment application for employment with Better–Bilt? And, then, it says "answer," and there is a line for yes and a line for no, and you put a yes or no, depending on what you find.
>
> Second question: If your answer to the above is yes, would Better–Bilt have discharged or terminated Jason Thompson for the misstatement if it had learned of the misstatement while Jason Thompson was still employed by Better–Bilt? Again, you would answer yes on [sic] no.
>
> Ladies and gentlemen, if your answer to both A and B is yes, the Court will later

decide whether the after acquired evidence defense would bar any recovery by Jason Thompson or only reduce the amount of damages.

Thompson claims that the trial court's interrogatories were improper because they deprived the jury of rendering a general verdict based upon properly formulated law. Thompson asserts that if the jury had found for him on the wrongful termination claim, its verdict might ultimately be inconsistent with the court's, and that the interrogatories confused the jury about the effectiveness of its general verdict. In light of our foregoing discussion of the after-acquired evidence issue, however, and the fact that the jury did not answer the interrogatories, we do not conclude that Thompson was prejudiced by the submission of these special interrogatories.

*Attorneys' Fees*

■ Because we believe that the action appealed in the second proceeding sounded in tort and not contract, we decline to grant Better–Bilt's request for attorney's fees. *See Morris v. Achen Const. Co.,* 155 Ariz. 512, 514, 747 P.2d 1211, 1213 (1987) (where tort can be committed without a breach of contract, the action does not arise out of contract for the purposes of A.R.S. § 12.341.01).

## CONCLUSION

The trial court did not err in dismissing Thompson's negligence and breach of contract claims, nor in instructing the jury. Thompson did not preserve the claim of error premised on *McKennon.* Thompson was not prejudiced by the special interrogatories to the jury. Accordingly, we affirm.

EHRLICH and KLEINSCHMIDT, JJ., concur.