NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CANDACE K. CZARNY, an unmarried woman and STEVEN G. THOMSON, an unmarried man, *Plaintiffs/Appellants*,

*v.*

HYATT RESIDENTIAL MARKETING CORPORATION, a Florida corporation; and KENT DRYSDALE and ALLISON R. DRYSDALE, a married couple, *Defendants/Appellees*.

No. 1 CA-CV 16-0577
FILED 3-8-2018

Appeal from the Superior Court in Maricopa County
No. CV2013-006230
The Honorable Dawn M. Bergin, Judge

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

COUNSEL

Joshua Carden Law Firm, PC, Scottsdale
By Joshua W. Carden
*Counsel for Plaintiffs/Appellants*

Jaburg & Wilk, PC, Phoenix
By Kraig J. Marton, Jeffrey A. Silence
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jennifer M. Perkins joined.

---

**C A T T A N I**, Judge:

¶1 Candace Czarny and Steven Thomson appeal the superior court's dismissal of their claims against Hyatt Residential Marketing Corporation and Kent and Allison Drysdale. For reasons that follow, we reverse the superior court's grant of summary judgment on Czarny's wrongful discharge claim under Arizona Revised Statutes ("A.R.S.") § 23-1501. In all other respects, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2 Czarny worked as a timeshare sales executive for Hyatt from January 2011 until August 2012, when she was fired.

¶3 Hyatt required sales executives to generate $60,000 in total monthly sales and to have an average volume per guest ("VPG") of $2,000. Czarny did not meet these requirements in six of the seven months preceding her termination, and she received employee disciplinary notices for failing to meet sales requirements in October 2011, November 2011, December 2011, mid-June 2012, and June 2012.

¶4 Czarny emailed Hyatt's employee relations coordinator in June 2012 detailing her dissatisfaction with her work environment, claiming in particular a hostile work environment and workplace bullying. Czarny also asserted that her managers were not helpful and manipulated customer tours to make it less likely her tours would generate sales.

¶5 In a July 2012 email, Czarny asserted that Kent Drysdale, her manager, prevented her from closing a large sale, and that she felt discriminated against because of her age and sex. Czarny also claimed that Hyatt managers were not doing "their fiduciary duty to the client" and might be violating Arizona law by frequently telling customers they had signed a document that did not exist, and by lying to customers about timeshare pricing and availability. Czarny cited instances in which Hyatt's managers purportedly told customers they had relinquished certain rights to their timeshare ownership by signing a document, even though there

was no such document. Czarny also cited instances of managers purportedly lying to customers about the pricing and availability of timeshares and upgrades, and she specifically stated her belief that these acts violated the Arizona Administrative Code. Hyatt terminated Czarny a few days after she sent this email.

¶6 Thomson worked for less than one month as a timeshare sales executive in April 2012. At some point, he expressed to Drysdale a preference for making sales as a "clean deal," but he did not assert that he was being asked to do anything illegal or that Hyatt employees were engaging in illegal conduct. Hyatt terminated Thomson's employment in late-April 2012 after he had not made a single sale in 25 days on the job.

¶7 Both Czarny and Thomson filed wrongful discharge claims against Hyatt under provisions of the Arizona Employment Protection Act ("AEPA"), A.R.S. § 23-1501(A)(3)(c)(i)–(ii), claiming that they were fired in retaliation for refusing to commit fraud and for disclosing that Hyatt was committing fraud. Hyatt moved for summary judgment, arguing Czarny and Thomson were fired for not meeting their sales requirements. The superior court granted summary judgment in favor of Hyatt, finding that Czarny and Thomson had made a prima facie case for wrongful discharge, but that Hyatt had articulated legitimate, non-retaliatory reasons for the terminations, and Czarny and Thomson had failed to offer evidence sufficient to create a genuine issue of material fact as to whether the purported reasons were pretextual.

¶8 Czarny and Thomson timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶9 Czarny and Thomson argue that the superior court erred by granting summary judgment notwithstanding issues of fact regarding whether Hyatt's proffered reasons for terminating their employment were legitimate and not pretextual. We review de novo the grant of summary judgment. *Sign Here Petitions LLC v. Chavez*, 243 Ariz. 99, 104, ¶ 13 (App. 2017). We view the facts in the light most favorable to, and draw reasonable inferences in favor of, the party against whom summary judgment was granted. *Woerth v. City of Flagstaff*, 167 Ariz. 412, 416 (App. 1990).

¶10 Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). We will affirm the superior court's decision if it is correct for any

reason supported by the record. *City of Phoenix v. Geyler*, 144 Ariz. 323, 330 (1985).

## I. Protection from Retaliatory Discharge.

**¶11** AEPA provides protections against retaliatory discharge from employment. As relevant here, a wrongful discharge claim may be established if an employee was terminated in retaliation for refusing to commit an unlawful act or for disclosing to a supervisor the employer's unlawful acts. A.R.S. § 23-1501(A)(3)(c)(i)–(ii).

**¶12** In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), the United States Supreme Court held that, if an employee establishes a prima facie case for employment discrimination based on race under Title VII of the Civil Rights Act of 1964, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's termination; if the employer does so, the burden shifts back to the employee to show that the employer's proffered explanation was pretextual.

**¶13** This court has applied the *McDonnell Douglas* burden-shifting framework to wrongful discharge claims under A.R.S. § 41-1464 (alleged retaliation for asserting employment discrimination violations), *see Najar v. State*, 198 Ariz. 345, 347–48, ¶ 8 (App. 2000), and we agree with the parties that the framework likewise applies to claims under § 23-1501.

### A. Czarny's Dismissal.

**¶14** As detailed above, Czarny was fired shortly after complaining about alleged illegal practices by Hyatt employees. Based on the record presented, the superior court found—and we agree—that Czarny made a prima facie case for a wrongful discharge claim under § 23-1501(A)(3)(c)(ii).

**¶15** The superior court further found—and we again agree—that there were no issues of fact regarding Czarny's poor sales, which Hyatt cited as its reason for terminating her. Hyatt required $60,000 in monthly sales and a $2,000 VPG from its sales executives. Czarny's monthly sales from January 2012 to July 2012 were $4,300, $34,190, $47,490, $54,260, $119,480, $24,500, and $28,280, respectively. Thus, she did not meet Hyatt's sales requirement in six of her last seven months. Likewise, Czarny did not meet her VPG requirements in five out of her last seven months; from January 2012 to July 2012 her VPG was $215, $2,849, $1,405, $1,871, $3,229,

$790, and $1,131, respectively. Accordingly, Hyatt presented a legitimate, non-retaliatory reason for Czarny's termination.

¶16 Czarny argues, however, that the superior court erred by summarily finding that Hyatt's proffered reason was not pretextual. *See Najar*, 198 Ariz. at 348, ¶ 8. Czarny asserts in particular that the record in fact reflects a genuine dispute of material fact precluding summary judgment on that issue.

¶17 Prior to the AEPA, an employee asserting a whistle-blower retaliation claim was required to show that retaliation was a substantial (even if not the sole) motivating factor in the termination, *see Thompson v. Better-Bilt Aluminum Prods. Co.*, 187 Ariz. 121, 127 (App. 1996), and that standard remains the same under the AEPA, *see Pleak v. Entrada Prop. Owners' Ass'n*, 207 Ariz. 418, 422, ¶ 12 (2004) (noting the rule of construction that statutes are generally to be interpreted with "every intendment in favor of consistency with the common law") (citation omitted). In demonstrating pretext, an employee may present direct evidence or circumstantial evidence that is "specific" and "substantial." *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221–22 (9th Cir. 1998).

¶18 Here, Czarny emailed Hyatt's employee relations coordinator on July 24, 2012 stating that she thought Hyatt managers might be violating the Arizona Administrative Code by lying to customers about pricing and availability and by telling customers that they had waived certain rights as timeshare owners by signing a document that did not exist. Two days later, the employee relations coordinator emailed Drysdale and another Hyatt manager, stating, "We have received additional emails from [Czarny]. What is her monthly volume this month so far?" Although it is not clear that Hyatt's managers lied to customers about the pricing and availability of timeshare units, the timing of Hyatt's decision to look further into Czarny's sales numbers and the July 2012 email correspondence—less than a week before Hyatt terminated her—created a genuine issue of fact as to whether Czarny was fired in retaliation for her allegations of misconduct by Hyatt employees. Accordingly, the superior court erred by granting summary judgment as to Czarny's claim.[1]

---

[1] Czarny also argues that the superior court should have drawn an inference in her favor that Hyatt's reason was not legitimate because of shifting sales volume requirements and manipulated sales numbers. But Czarny received disciplinary notices for failure to meet the sales volume

**¶19**          Finally, Hyatt argues that Czarny's claim against Drysdale should be dismissed because Drysdale was not involved in the decision to fire Czarny.  But Hyatt did not present this argument to the superior court, and we thus decline to address it, *see Sierra Tucson, Inc. v. Bergin*, 239 Ariz. 507, 511, ¶ 12 (App. 2016), without prejudice to Hyatt or Drysdale asserting it on remand.

### B.          Thomson's Dismissal.

**¶20**          Thomson alleged that he was fired for refusing to commit fraud, and the superior court found that, like Czarny, he had established a prima facie case for wrongful discharge.  Although we disagree that Thomson established even a prima facie case, we agree with the superior court that Thomson did not offer facts sufficient to show that Hyatt's reason for dismissing him was pretextual, and that he thus did not establish a viable claim for retaliatory discharge.

**¶21**          Thomson argues that evidence of the temporal proximity of his refusal to engage in improper acts and his termination created an issue of fact regarding whether his termination was pretextual.  He also asserts that the fact that he was not given the full 90-day adjustment period raises an issue of fact.

**¶22**          In support of his claim that Hyatt terminated him in retaliation, the only evidence Thomson proffered to show that he refused to engage in alleged wrongdoing by Hyatt was his statement that he preferred making sales as a "clean deal."  But that statement did not specify or imply a statutory or constitutional violation by Hyatt employees that would give rise to a claim of retaliation under § 23-1501(A)(3)(c)(ii).  Nor

---

requirement in October 2011, November 2011, December 2011, June 2012, and July 2012, and each disciplinary notice clearly stated a required sales volume.  Further, Czarny's monthly reviews from February, March, April, May, and June of 2012 show that she did not meet the volume requirements—which were prominently displayed, in bold, at the top of each review.  Moreover, Czarny received a review in mid-June 2012 that said "it is imperative that you reach the month end hurtle [sic] of $60,000 as this is the corporate minimum."  And notwithstanding her conclusory allegations regarding manipulated sales numbers, Czarny presented no admissible evidence of such manipulation.  Accordingly, the superior court did not err by rejecting Czarny's argument regarding shifting sales requirements and manipulated sales numbers.

did Thomson's statement specify that he was instructed—and refused—to do something illegal as required for a claim under § 23-1501(A)(3)(c)(i).

¶23 Hyatt's employee handbook made clear that the purpose of the company's "adjustment period" was to allow Hyatt to determine "within" 90 days whether an employee's skills met Hyatt's standards. The handbook did not promise that an employee would be given 90 days before a decision regarding employment status would be made. Thomson acknowledged that he made no sales while he was employed, and he did not show that Hyatt treated other similarly situated employees differently. Accordingly, the superior court correctly granted summary judgment in favor of Hyatt on Thomson's claim.

## CONCLUSION

¶24 For the foregoing reasons, we affirm the judgment as to Thomson's claim, reverse summary judgment as to Czarny's claim, and remand for further proceedings consistent with this decision.

