NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

CARLOS YANEZ, *Plaintiff/Appellant*,

*v.*

CHANDAN KUNDAVARAM, M.D., et al., *Defendants/Appellees*.

No. 1 CA-CV 20-0303
FILED 8-10-2021

Appeal from the Superior Court in Maricopa County
No. CV2017-014109
The Honorable Danielle J. Viola, Judge

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

COUNSEL

Kelly & Lyons, PLLC, Scottsdale
By Jason M. Kelly, Richard D. Lyons
*Counsel for Plaintiff/Appellant*

Sanders & Park, PC, Phoenix
By Robin E. Burgess, Molly B. Adrian
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Chief Judge Kent E. Cattani delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Brian Y. Furuya joined.

---

**C A T T A N I**, Chief Judge:

¶1        Carlos Yanez appeals the judgment and the superior court's order denying his motion for new trial in a medical malpractice case.  Yanez argues the superior court gave erroneous jury instructions and miscalculated taxable costs.  For reasons that follow, we vacate the costs award and remand for a redetermination of the award.  In all other respects, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        In March 2017, Dr. Chandan Kundavaram removed Yanez's prostate during a computer-assisted robotic surgery.  After the surgery, Yanez felt significant pain, and a subsequent X-ray and CT scan revealed a suture needle inadvertently left in Yanez's pelvis.  Dr. Kundavaram performed another surgery four days later to remove the needle.

¶3        The suture needle left in Yanez's body was one of two needles used to connect the bladder and the urethra.  During the surgery, Dr. Kundavaram's surgical assistant, Matthew Tremayne, accidentally knocked a pair of scissors from the instrument tray onto the ground while working on the patient's left side.  After getting a new pair of scissors and moving to the patient's right side, Tremayne apparently forgot to go back to the left side to remove the suture needle.

¶4        As Dr. Kundavaram completed the surgery, the scrub technician and the circulating nurse performed two counts of the medical instruments that had been removed from the body to compare to the initial count of instruments present before surgery began.  One count did not match the initial count, but the other count did, so Dr. Kundavaram asked the scrub technician and the circulating nurse to count a third time.  The final two counts matched the scrub technician's initial instrument count, so the nurse reported it as "accurate and correct."  Relying on those final two counts, Dr. Kundavaram sewed up the patient.

2

¶5　　　　Yanez brought a medical negligence claim against Dr. Kundavaram and Abrazo Community Health Network, the hospital where the surgery took place.  Yanez did not sue Tremayne.  Yanez settled with Abrazo and proceeded to trial against Dr. Kundavaram.  During the six-day trial, Yanez, Dr. Kundavaram, Tremayne, the scrub technician, and several experts testified.  The jury found in favor of Dr. Kundavaram.  The court issued a judgment in favor of Dr. Kundavaram and awarded him taxable costs in the amount of $13,146.87, including the fees he paid for two experts to testify at trial.

¶6　　　　Yanez filed a motion for new trial under Arizona Rule of Civil Procedure 59, arguing that (1) the court should have instructed the jury regarding vicarious liability, and (2) the court's instruction on the measure of recoverable damages misled the jury.  The court denied the motion, and Yanez timely appealed.　　We have jurisdiction under A.R.S. § 12-2101(A)(1), (5)(a).

**DISCUSSION**

I.　　**Jury Instructions.**

¶7　　　　Yanez asserts that the superior court improperly rejected his proposed respondeat superior jury instruction, and that the court's damages instruction was improper.

¶8　　　　We review the denial of a requested jury instruction for an abuse of discretion.  *Strawberry Water Co. v. Paulsen*, 220 Ariz. 401, 409, ¶ 21 (App. 2008).  "The court must give a proposed jury instruction 'if: (1) the evidence presented supports the instruction, (2) the instruction is proper under the law, and (3) the instruction pertains to an important issue, and the gist of the instruction is not given in any other instructions.'"  *Id.* at ¶ 22 (quoting *DeMontiney v. Desert Manor Convalescent Ctr. Inc.*, 144 Ariz. 6, 10 (1985)).  We review jury instructions "as a whole with an eye toward determining whether the jury was given the proper rules of law to apply in arriving at its decision."  *Thompson v. Better-Bilt Aluminum Prods. Co.*, 187 Ariz. 121, 126 (App. 1996).  We will not disturb a jury verdict based on instructional error absent "substantial doubt as to whether the jury was properly guided in its deliberations."  *Id.*

¶9　　　　At trial, Yanez argued for the inclusion of a respondeat superior jury instruction, alleging that Tremayne was Dr. Kundavaram's agent.  Dr. Kundavaram opposed the instruction, arguing that he was responsible only for his own acts and that it was the Abrazo staff that was

negligent. Tremayne was not named in the suit. The court denied Yanez's request for the respondeat superior jury instruction.

¶10 Respondeat superior applies to employer/employee relationships when the employee was acting within the scope of his or her employment, but it is not generally applicable to independent contractors. *See Kopp v. Physician Grp. of Ariz., Inc.*, 244 Ariz. 439, 441, ¶ 9 (2018) (explaining that respondeat superior renders the principal liable for the "negligent work-related actions" of his or her agents); *Wiggs v. City of Phx.*, 198 Ariz. 367, 369, ¶ 7 (2000) (distinguishing between employees and independent contractors for these purposes); *see also* Rev. Ariz. Jury Instr. (Civil) Standard 5 (6th ed. 2015) ("Respondeat Superior Liability"). A principal is not liable for an independent contractor's negligence if the principal only "instructs the independent contractor (agent)[] on what to do, but not how to do it. That is what distinguishes an independent contractor from an employee." *Wiggs*, 198 Ariz. at 370, ¶ 10 (citing Restatement (Second) of Agency § 2(3) (1958)).

¶11 Yanez does not dispute that Tremayne was an independent contractor. Instead, Yanez argues that there was an agency relationship between Dr. Kundavaram and Tremayne. Yanez relies on a statement Dr. Kundavaram made during a deposition (and that was repeated by his own expert during trial) to "show" Dr. Kundavaram's control: Dr. Kundavaram stated that a surgeon is "responsible for how your assistant is helping you." But that statement was not an admission that Tremayne was Dr. Kundavaram's employee, and instead was simply an acknowledgement that the surgical assistant's work is guided by the surgeon.

¶12 While it is true that an independent contractor can be an agent, *see id.*, Yanez failed to prove that an agency relationship existed between Tremayne and Dr. Kundavaram such that respondeat superior liability applies. During trial, Tremayne testified that his job primarily consists of exchanging instruments with the surgeon and the robot, retraction, suction, and passing and removing sutures. Tremayne testified that he "practic[es] independently during these procedures" and he does not need the surgeon telling him every aspect of what to do. Dr. Kundavaram also testified that Tremayne "works very independently" and that Dr. Kundavaram relied on Tremayne to perform his job while Dr. Kundavaram performed his own duties. Dr. Kundavaram testified that he sits at a distance from the operating table, "sometimes with [his] back to the patient," directing the robot by placing his head inside a console. In contrast to Tremayne, Dr. Kundavaram—although physically present in the room and controlling the instruments—was not "scrubbed in" (or

sterile), and was not tasked with removing instruments from the patient during the operation. Yanez did not controvert this testimony or otherwise provide evidence that Dr. Kundavaram could, or did, exercise specific control over this aspect of Tremayne's work. *See id.* Accordingly, the superior court did not abuse its discretion by denying the requested respondeat superior jury instruction.

¶13        Yanez notes that Dr. Kundavaram did not name Tremayne as a non-party at fault, which "sand-bagged" him at trial, as demonstrated by a juror questioning why Tremayne was not included on the "list to hold accountable." Yanez also notes that Dr. Kundavaram did not argue at trial that Tremayne bore responsibility (although Dr. Kundavaram's counsel did elicit testimony from Tremayne that he forgot to remove the suture needle). But those facts do not establish an agency relationship. And the plaintiff, as "master of the claim," *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987), can—and must—join every person as a party to the suit so that the court can "accord complete relief among existing parties." Ariz. R. Civ. P. 19(a)(1)(A). Here, Yanez could have joined Tremayne as a defendant in the lawsuit but did not do so. Yanez's failure to do so did not entitle him to a respondeat superior instruction.

¶14        Moreover, the jury was properly instructed on Arizona's law regarding comparative fault, under which a tortfeasor is liable only to the extent of his or her own fault. A.R.S. § 12-2506(A) ("Each defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault . . . ."); *Ryan v. S.F. Peaks Trucking Co.*, 228 Ariz. 42, 51, ¶ 34 (App. 2011) (citing sources). The comparative fault of Dr. Kundavaram individually was properly submitted to the jury, as was the comparative fault of the Abrazo staff responsible for counting the instruments, and Yanez has shown no error in these jury instructions. *Thompson*, 187 Ariz. at 126.

¶15        Next, Yanez challenges the damages instruction provided to the jurors, asserting that the instruction wrongfully omitted the value of the second surgery and subsequent hospitalization. Before trial, the court granted Dr. Kundavaram's motion *in limine* precluding Yanez from discussing any evidence of expenses related to his subsequent surgery to remove the needle because he was not charged for those services.

¶16        Yanez argues that he was entitled to claim the reasonable value of all medical expenses rendered, not just those costs actually paid. As they did below, the parties dispute whether Yanez can claim the value of the second surgery and hospitalization as medical expenses when he was

never billed for the second surgery to remove the needle (or the subsequent hospitalization). *See Lopez v. Safeway Stores, Inc.*, 212 Ariz. 198, 206–07, ¶¶ 24, 26 (App. 2006) (authorizing recovery of "the full amount of reasonable medical expenses charged, based on the reasonable value of medical services rendered, including amounts written off from the bills pursuant to contractual rate reductions"). But where the jury finds no liability on the part of the defendant, any purported error in a damages instruction is harmless. *Medlyn v. Kimble*, 106 Ariz. 66, 68 (1970). Accordingly, we decline to reach this issue.

## II. Expert Witness Fees as Taxable Costs.

**¶17** Finally, Yanez argues that the superior court erred by awarding Dr. Kundavaram his testifying expert witness fees as taxable costs under Rule 54.

**¶18** After trial, Dr. Kundavaram submitted his statement of costs that included $11,800 in expert witness fees: $1,800 for Linda Redding, R.N., and $10,000 for Dr. Ali Borhan. These fees appear to represent the amounts paid by Dr. Kundavaram for the experts' time while testifying at trial. Yanez argues that such fees are not awardable as taxable costs under Rule 54(f). We consider de novo whether expert witness fees may be considered taxable costs. *Schritter v. State Farm Mut. Auto. Ins. Co.*, 201 Ariz. 391, 392, ¶ 5 (2001).

**¶19** "A party to a civil action cannot recover its litigation expenses as costs without statutory authorization." *Id.* at ¶ 6. By statute, taxable costs include witness fees. A.R.S. § 12-332(A)(1). And testifying witness fees are limited to $12 per day with a travel allowance. A.R.S. § 12-303. The statutory scheme does not provide for "the allowance of expert witness fees" as costs. *Schritter*, 201 Ariz. at 392, ¶ 7 (quoting *State v. McDonald*, 88 Ariz. 1, 14 (1960)).

**¶20** Before 2017, Rule 54(f) provided: "[i]n medical malpractice cases only, witness fees, set forth in A.R.S. § 12-332(A)(1) as taxable costs in the Superior Court, shall include reasonable fees paid expert witnesses for testifying at trial." Ariz. R. Civ. P. 54(f)(2) (2016); *Foster ex rel. Foster v. Weir*, 212 Ariz. 193, 195, ¶ 4 (App. 2006). But in 2017, Rule 54 was amended and this specific carve-out for medical negligence claims was removed. Ariz. R. Civ. P. Order R-16-0010, at 156, 158–59, https://www.azcourts.gov/ Portals/20/2016%20Rules/R-16-0010.pdf. Although the 2017 amendments to Rule 54 "make several clarifying and substantive changes," none of the

rule-change comments discuss the removal of the medical malpractice-specific language. *Id.* at 158–59.

**¶21** Because the 2017 amendment to Rule 54(f) removed any specific reference to medical negligence claims, expert witness fees in medical negligence claims are treated like they are in connection with other claims. And in all other claims, "the fees [a litigant] pays its own expert witness are not recoverable." *RS Indus., Inc. v. Candrian*, 240 Ariz. 132, 137, ¶ 16 (App. 2016). Accordingly, the fees a litigant pays his own expert witness for testifying in medical malpractice cases are not taxable costs, and the superior court erred when it awarded them as such.

**¶22** Dr. Kundavaram offers no other basis to authorize these testifying expert witness fees as taxable costs. He asserts, however, that he is entitled to the fees because Arizona law requires experts in medical malpractice actions. But while almost all medical malpractice claims require *claimants*—or plaintiffs—to use experts to establish the standard of care under A.R.S. § 12-2603(B), it is not accurate, as Dr. Kundavaram asserts, to suggest that a defendant in a medical malpractice claim *must* retain an expert. *See Seisinger v. Siebel*, 220 Ariz. 85, 94–95, ¶¶ 33, 35–36 (explaining the plaintiff's duty to provide a physician expert witness in a medical malpractice case against a physician to avoid judgment for the defendant). Moreover, even assuming expert witnesses are generally necessary to rebut required expert witness testimony, there is no statutory provision authorizing recovery in litigation of such witness expenses.

**¶23** Accordingly, we vacate the superior court's award of expert fees as costs and remand for Dr. Kundavaram's costs to be reduced by $11,800.

## III.    Transcripts and Sanction Request.

**¶24** Dr. Kundavaram alleges that Yanez failed to scrupulously follow ARCAP 11 and violated other ARCAP provisions. Dr. Kundavaram requests ARCAP 25 sanctions against Yanez and the dismissal of the appeal. In our discretion, we decline to impose sanctions.

**CONCLUSION**

**¶25**　　　　For the foregoing reasons, we affirm the judgment on the merits but vacate the award of $11,800 in expert witness fees as taxable costs and remand for entry of judgment with the proper calculation of costs. In our discretion, we deny both parties their costs associated with the appeal.

