IN THE COURT OF APPEALS
STATE OF ARIZONA



FILED BY CLERK

FEB 28 2006

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| CHRIS FOSTER and DEBRA FOSTER, husband and wife, on behalf of themselves and their minor daughter, KARA FOSTER, | ) ) ) ) ) | |
| Plaintiffs/Appellees/ Cross-Appellants, | ) ) ) | 2 CA-CV 2005-0096 DEPARTMENT B |
| | ) | O P I N I O N |
| v. | ) ) | |
| G. THOMAS WEIR, JR., D.D.S., and JANE DOE WEIR, husband and wife; G. THOMAS WEIR, JR., D.D.S., P.C., an Arizona corporation; and ORTHODONTIC CENTERS OF ARIZONA, INC., an Arizona corporation, | ) ) ) ) ) ) ) | |
| Defendants/Appellants/ Cross-Appellees. | ) ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20035760

Honorable Carmine Cornelio, Judge

VACATED AND REMANDED

Law Office of JoJene Mills, P.C.
  By JoJene Mills, P.C.C.

Tucson
Attorney for Plaintiffs/
Appellees/Cross-Appellants

Jardine, Baker, Hickman & Houston
  By Gerald T. Hickman and John Drazkowski

Phoenix
Attorneys for Defendants/
Appellants/Cross-Appellees

---

E C K E R S T R O M, Presiding Judge.

¶1        In this appeal, appellants/cross-appellees Dr. Thomas Weir and Orthodontic Centers of Arizona, Inc., and appellees/cross-appellants Chris, Debra, and Kara Foster challenge only the propriety and reasonableness of the trial court's award of expert witness fees under Rule 54(f)(2), Ariz. R. Civ. P., 16 A.R.S., Pt. 2.  For the reasons stated below, we vacate the award and remand the case for further proceedings.

**Background**

¶2        Debra and Chris Foster filed an action against Weir, alleging negligence in his treatment of Kara Foster, their minor daughter, who suffered root resorption as a result of the orthodontic treatment she had received from Weir.  The jury returned a verdict in favor of the Fosters and awarded $109,200 in damages.  The Fosters sought $12,425.73 and $1,575 respectively to recoup the costs incurred for their expert witnesses, Dr. Boyd and Dr. Cueva.  Weir objected to the requested amounts.

¶3        The trial court awarded the Fosters $7,444 for Boyd's fees, which included compensation for his time reviewing the case file, time spent with the Fosters' attorney, and

2

his 3.5 hours of trial testimony. The trial court also awarded the Fosters the entire amount requested for Cueva's fees. Both Weir and the Fosters now appeal those awards.

**Discussion**

¶4　　As a general rule, the parties to a civil proceeding are responsible for their own litigation expenses. *Wichita v. Pima County*, 131 Ariz. 576, 577, 643 P.2d 21, 22 (App. 1982). Those expenses may not be recovered as costs unless a statute so provides. *Schritter v. State Farm Mut. Auto. Ins. Co.*, 201 Ariz. 391, ¶ 6, 36 P.3d 739, 740 (2001). Costs in superior court are awarded pursuant to A.R.S. § 12-332 and include the "[f]ees of officers and witnesses." § 12-332(A)(1). In the narrow context of medical malpractice lawsuits, "witness fees, set forth in A.R.S. § 12-332([A])(1) as taxable costs in the Superior Court, shall include reasonable fees paid expert witnesses for testifying at trial." Ariz. R. Civ. P. 54(f)(2).

¶5　　The parties disagree on the intended scope of that provision. Weir claims that only the cost of an expert's time actually spent testifying in superior court is recoverable under the rule. Accordingly, he argues, the Fosters should have been awarded costs for Boyd's 3.5 hours of testimony but not for the time he spent preparing for trial. Moreover, Weir argues, because Cueva had not been disclosed as an expert witness before trial, the Fosters should not have recovered any of his fees under Rule 54(f)(2). In their cross-appeal, the Fosters claim the trial court erred by not awarding them more of Boyd's fees under Rule 54(f)(2)—specifically, some additional time Boyd spent in trial preparation following the

3

settlement conference, including his review of other witnesses' deposition testimony and Weir's medical literature. Because no Arizona court has considered the reach of Rule 54(f)(2), this is a matter of first impression. As an issue of statutory interpretation, whether certain expenditures are taxable costs is a matter of law that we review *de novo*. *See Schritter*, 201 Ariz. 391, ¶ 5, 36 P.3d at 740.

**¶6** Rules are interpreted in accord with the drafters' intent, the best evidence of which is the plain language of the rule. *Fragoso v. Fell*, 210 Ariz. 427, ¶ 7, 111 P.3d 1027, 1030 (App. 2005). We rely on alternative methods of construction only if the language is ambiguous. *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996); *see Nielson v. Patterson*, 204 Ariz. 530, ¶ 5, 65 P.3d 911, 912 (2003) (applying rules of statutory construction to interpret ambiguous procedural rules). Those alternative methods include consideration of the rule's context, background, effect, or purpose. *See Zamora*, 185 Ariz. at 275, 915 P.2d at 1230.

**¶7** Here, the pertinent clause of Rule 54(f)(2)—"witness fees . . . shall include reasonable fees paid expert witnesses for testifying at trial"—is subject to two plausible interpretations. On one hand, Weir contends provisions related to the recovery of litigation costs are construed narrowly and we should therefore interpret the language of the rule to exclude expenses incurred in trial preparation. *See Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Bach*, 193 Ariz. 401, ¶ 7, 973 P.2d at 106, 107-08 (1999) (noting "consistent

4

refusal" of courts to interpret cost statute broadly). In essence, Weir argues the phrase "for testifying at trial" encompasses only the time an expert actually spends testifying.

**¶8** The Fosters counter that an expert's fee "for testifying at trial" necessarily also includes the cost of time spent preparing for that testimony and associated travel time. They contend a narrow interpretation of the rule would not only lead to absurd and unjustifiable results but would frustrate the rule's purpose and intent. *See City of Phoenix v. Superior Court*, 101 Ariz. 265, 267, 419 P.2d 49, 51 (1966) (statutory construction should not produce absurd results). For the reasons explained below, we conclude that Rule 54(f)(2) encompasses as a taxable cost only those fees incurred for an expert witness's actual attendance at trial to testify and that the additional expenses incurred to retain and prepare an expert witness for trial are not recoverable under the rule.

**¶9** Rule 54(f)(2) must be read in conjunction with § 12-332 and the other provisions in Title 12, chapter 3, A.R.S., relating to fees and costs. *See State ex rel. McDougall v. Superior Court*, 173 Ariz. 385, 386, 843 P.2d 1277, 1278 (App. 1992) (procedural rules and statutes must be construed together). Because these provisions are *in pari materia*, that is, on the same subject, they must be interpreted in a "harmonious and consistent" manner. *State ex rel. Larson v. Farley*, 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970). Indeed, Rule 54(f)(2) itself requires us to determine which expert fees can be considered taxable costs by referring to those fees allowed by the legislature in § 12-332(A)(1). *See* Ariz. R. Civ. P. 54(f)(2) ("[W]itness fees, *set forth in A.R.S. § 12-*

*332([A])(1) as taxable costs . . .* shall include reasonable fees paid expert witnesses for testifying at trial.") (emphasis added). When read together with a related provision, A.R.S. § 12-303, § 12-332 restricts witness fees to costs associated with actual attendance at trial to testify. *See* § 12-303 (limiting witness fees taxable as costs in non-medical malpractice cases to twelve dollars per day, plus mileage, for each day witness attends trial). Thus, the language of Rule 54(f), when read in conjunction with § 12-332 as the rule itself requires, suggests that expert witness fees are only taxable as costs to the extent they represent time actually spent testifying or being available for testimony at trial.

¶10        No legal authority compels a broader construction of Rule 54(f)(2). In fact, we have found that, when the legislature has intended to permit recovery of fees incurred in preparing for expert testimony, it has done so in explicit terms. For example, in certain actions involving the state, the opposing party may recover the expenses associated with an expert's "actual time expended in representing the party." A.R.S. § 12-348(D). These expenses are awarded "*[i]n addition to* any costs which are awarded as prescribed by statute." § 12-348(B) (emphasis added). Notably, § 12-348(B), like Rule 54(f)(2), was enacted against the backdrop of § 12-332, and we believe our supreme court crafts its rules in full cognizance of the statutory context within which those rules operate. Had the supreme court intended to expand the costs recoverable in medical malpractice cases to the extent Foster suggests, we believe it would have done so in clearer, more specific language, such as that used by the legislature in § 12-348 and its own language in drafting other cost-

6

shifting provisions. *See, e.g.*, Ariz. R. Civ. P. 68(d), 16 A.R.S., Pt. 2 (supreme court articulating enlarged scope of expert witness fees recoverable as sanction for not accepting offer of judgment).

¶11 In a somewhat different context, the supreme court has addressed the implications of cost-shifting for less wealthy litigants. In *Schritter*, the court considered whether the language of § 12-332 permitted recovering as costs the fees paid to depose one's own expert witnesses when the deposition testimony was used in lieu of live testimony at trial. 201 Ariz. 391, ¶ 1, 36 P.3d at 739. In reviewing the policy arguments for and against allowing such expenses to be taxed as costs, the supreme court noted that "wealthier parties could depose their highly-paid experts at length, plan to use the depositions in lieu of live trial testimony, and then use the possibility of recovering the deposition fees as taxable costs as a means of gaining settlement leverage." *Schritter*, 201 Ariz. 391, ¶ 16, 36 P.3d at 742.

¶12 Here, the Fosters seek an interpretation of Rule 54(f)(2) that would shift to the losing party in every medical malpractice trial the prevailing party's expert witness fees incurred in preparation for trial. Because the expert witnesses in medical malpractice actions are usually highly trained medical specialists, those fees will often be so substantial that poorer litigants simply could not afford to risk incurring them. The Fosters counter that their interpretation of Rule 54(f) would actually benefit litigants of modest means because it would potentially allow such litigants to escape paying their own prohibitively expensive expert witness fees. But Rule 68(d) already provides such a mechanism. And, we find it

7

unlikely that the supreme court—sensitive to any potential impact of cost shifting on less wealthy litigants—would promulgate in Rule 54(f) a rule dramatically reallocating the ultimate responsibility for expert witness fees without using language that clearly demonstrates its intent to do so.

¶13 At oral argument, the Fosters emphasized that, if the rule was intended only to tax as costs those expert witness fees incurred for the expert's time spent attending trial to testify, its effect would be too insignificant to have been worth the supreme court's effort to promulgate it. But, in the absence of that rule, a court could impose taxable costs of no more than twelve dollars a day for witness fees. *See* § 12-303. Thus, although the rule, as we interpret it, does not authorize the dramatic shift in responsibility for experts' preparation expenses envisioned by the Fosters, its effect is far from insignificant. Indeed, even under the narrow interpretation we apply here, the Fosters will be entitled to recover over two thousand dollars of their own expert witness fees as taxable costs.

¶14 The Fosters observe correctly that the rule was originally promulgated as part of the Uniform Rules for Medical Malpractice Cases, whose stated purpose was to create a "more efficient and less expensive system" for such litigation. *See* Preamble, Ariz. Unif. R. P. Med. Malpractice Cases, adopted Nov. 9, 1989, effective Jan. 1, 1990 (superseded 2000). But the Fosters have not explained why the supreme court's intent to create a more efficient and less expensive system would necessarily cause it to promulgate a more dramatic cost-shifting measure in Rule 54(f). Accordingly, we conclude the trial court abused its

8

discretion when it taxed to Weir some of the fees charged by the Fosters' expert witness, Dr. Boyd, in preparing for his trial testimony. In so concluding, we necessarily reject the Fosters' cross-appeal challenging the trial court's failure to tax to Weir some additional fees the Fosters claimed for Boyd's trial preparation.

¶15 The trial court also erred by including Boyd's travel expenses from California as taxable costs. As noted, the supreme court has expressly anchored Rule 54(f)(2) to § 12-332(A)(1), which authorizes taxing witness fees as costs. The legislature has limited witness fees in § 12-303 to include compensation only for mileage for traveling to court from the witness's "place of residence in the state of Arizona to the place of trial." *See Ponderosa Plaza v. Siplast*, 181 Ariz. 128, 134, 888 P.2d 1315, 1321 (App. 1993) (travel expenses of out-of-state witnesses not taxable as costs pursuant to § 12-332). And, as discussed at length, we do not interpret Rule 54(f)(2) to expand the statutory limits on taxable costs set forth in § 12-332, except to the extent expressly stated in the rule.

¶16 Finally, Weir claims the Fosters were not entitled to recover Dr. Cueva's fee because the Fosters had not disclosed Cueva as an expert witness in a timely fashion pursuant to Rule 16(c), Ariz. R. Civ. P., 16 A.R.S., Pt. 1.[1] Under Rule 16(c)(2), the parties to a medical malpractice action must disclose their expert witnesses on the issues of standard

---

[1]Alternatively, they assert that, even if Cueva's fee was an appropriate taxable cost, the amount of his fee was unreasonable. Because they did not present this claim to the trial court, we do not address it. *See Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977).

9

of care and causation within thirty to ninety days after the pretrial conference. Furthermore, Rule 16(c)(3) requires the parties to disclose all other expert witnesses within forty-five days before the close of discovery. Any witness not disclosed in accordance with these rules is precluded from testifying absent "a showing of extraordinary circumstances." *Id*. We decide witness-disclosure issues on a case-by-case basis. *See Perguson v. Tamis*, 188 Ariz. 425, 428, 937 P.2d 347, 350 (App. 1996).

¶17 Here, following the pretrial conference, the court ordered the parties to disclose all expert witnesses by July 2, 2004, and all lay witnesses by August 1, 2004. On June 29, 2004, the Fosters disclosed that Cueva "may be characterized as [an] expert witness . . . concerning the cost and frequency of necessary future care caused by Kara's root resorption." Thereafter, the Fosters did not include Cueva as an expert witness in their December 2004 disclosure statement. He was, however, among the Fosters' witnesses listed in the joint pretrial statement filed on December 23, 2004, but nothing in the statement indicated that he would be called as an expert. Cueva testified on the fourth day of trial. The trial court noted that he had testified as an expert and awarded the Fosters $1,575 for Cueva's fees.

¶18 The available record is silent on a number of important issues, including the content of Cueva's testimony. Nor is there any record of whether Weir objected to Cueva's testimony or to any expert opinion he may have given. In the absence of such material, we must assume the full record supports the trial court's implied conclusion that, under the

10

specific circumstances of this case, Cueva had been sufficiently disclosed as an expert witness pursuant to Rule 16(c) to justify taxing Cueva's fees for testifying at trial as a recoverable cost. *See Aguirre v. Forrest*, 186 Ariz. 393, 397, 923 P.2d 859, 863 (App. 1996) (presuming omissions in record support trial court's ruling).

## Disposition

**¶19**       We vacate the award of $7,444 in taxable costs for Dr. Boyd's fees and remand the case to the trial court to determine the appropriate amount taxable for Boyd's expert's trial testimony consistent with this holding. We affirm the award of $1,575 in taxable costs for Dr. Cueva's fees.


_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


_____
JOSEPH W. HOWARD, Judge


11