WALLACE, Judge.
Lorie Peterson and Clayton Peterson appeal the circuit court’s order denying their motion for a new trial on Mr. Peterson’s claim for loss of consortium. A jury found that Mrs. Peterson had sustained a permanent injury as a result of an automobile accident caused by an employee of Sun State International Trucks, LLC. The jury awarded Mrs. Peterson damages for her injuries but awarded nothing to Mr. Peterson on his claim for loss of consortium. Because the Petersons presented substantial unrebutted testimony concerning the adverse effect that Mrs. Peterson’s injuries had on their marital life, Mr. Peterson was entitled to an award of at least nominal damages on his claim. Accordingly, we reverse the circuit court’s order in part and remand for a new trial limited to the issue of the amount of Mr. Peterson’s damages for loss of consortium.
I. THE FACTS AND PROCEDURAL BACKGROUND
In November 2006, Mrs. Peterson was injured when the vehicle she was driving was struck from behind by a truck driven by an employee of Sun State. The impact of the collision was severe enough that it broke the front seat in Mrs. Peterson’s vehicle. Later, the Petersons’ insurance company declared the vehicle to be a total loss. Mrs. Peterson claimed that she sustained painful injuries to her neck and back as a result of the rear-end collision.
The Petersons filed an action against Sun State for damages, including a claim by Mr. Peterson for loss of consortium. Sun State admitted liability for the accident. But Sun State contended at trial that Mrs. Peterson’s injuries resulting from the accident were not permanent in nature and that her physical problems stemmed from preexisting conditions and a later automobile accident involving a collision with a deer.
The case went to trial in June 2008, approximately nineteen months after the accident. A jury found that Mrs. Peterson had sustained a permanent injury as a result of the accident caused by Sun State’s employee. The jury awarded Mrs. Peterson damages for past and future medical expenses. The jury also awarded Mrs. Peterson relatively modest sums for past and future noneconomic damages. But the jury did not award Mr. Peterson anything on his derivative claim for past and future loss of consortium.
The Petersons moved for a new trial on several grounds, including the failure of the jury to award Mr. Peterson anything on his claim for loss of consortium. In a written order, the trial court addressed the *842 issue of the loss of consortium claim as follows:
[T]he refusal of the jury to award Plaintiff Clayton Peterson damages for loss of consortium after determining that Plaintiff Lori[e] Peterson suffered a permanent injury is not a basis for ordering a new trial under the facts of this case. The jury considered evidence that indicated that the injury suffered by Plaintiff Peterson did not affect the marital relationship. Since the evidence on the issue of consortium was disputed, Plaintiff Clayton Peterson is not entitled to a new trial. See [ ] Hagens v. Hilston, 388 So.2d 1379 (Fla. 2d DCA 1980).
On this basis, the trial court denied the motion for a new trial on Mr. Peterson’s claim for loss of consortium.
II.THE PARTIES’ ARGUMENTS
On appeal, the Petersons contend that the trial court abused its discretion in denying their motion for a new trial on Mr. Peterson’s claim for loss of consortium. They argue that the unrebutted evidence concerning the adverse effect that the accident had on various aspects of their marital life required an award of at least nominal damages on Mr. Peterson’s claim. Sun State responds that the trial court properly denied the motion for a new trial. In Sun State’s view, the evidence at trial was disputed concerning whether Mr. Peterson had actually sustained any damages for loss of consortium.
III.THE STANDARD OF REVIEW
We review the order denying the motion for a new trial in this case for abuse of discretion. See Allstate Ins. Co. v. Manasse, 707 So.2d 1110, 1111 (Fla.1998); Big Lots Stores, Inc. v. Diaz, 18 So.3d 1065, 1067 (Fla. 3d DCA 2009); Tavakoly v. Fiddlers Green Ranch of Fla., Inc., 998 So.2d 1183, 1185 (Fla. 5th DCA 2009).
IV.DISCUSSION
A claim for loss of consortium is for the loss by the claiming spouse of
the companionship and fellowship of husband and wife and the right of each to the company, cooperation and aid of the other in every conjugal relation. Consortium means much more than mere sexual relation and consists, also, of that affection, solace, comfort, companionship, conjugal life, fellowship, society and assistance so necessary to a successful marriage.
Gates v. Foley, 247 So.2d 40, 43 (Fla.1971) (citing Lithgow v. Hamilton, 69 So.2d 776 (Fla.1954)). When a jury finds that one spouse has sustained injuries as a result of the negligence of a third party, an award of damages to the other spouse for loss of consortium is not automatic. Instead, in order to prevail on a claim for loss of consortium, the claiming spouse must present competent testimony concerning the impact that the incident has had on the marital relationship. See Albritton v. State Farm Mut. Auto. Ins. Co., 382 So.2d 1267, 1268 (Fla. 2d DCA 1980). “[T]he test for granting a new trial to the spouse that was awarded ‘zero’ damages [on a claim for loss of consortium] is whether testimony establishing the substantial impact the accident had on the marital life of the couple is ‘substantial,’ ‘undisputed,’ and ‘unrebutted.’ ” Lofley v. Insultech, Inc., 527 So.2d 902, 903 (Fla. 2d DCA 1988); accord Tavakoly, 998 So.2d at 1185; Jones v. Double D Props., Inc., 901 So.2d 929, 931 (Fla. 4th DCA 2005); Frye v. Suttles, 568 So.2d 983, 986 (Fla. 1st DCA 1990).
When this case went to trial, Mrs. Peterson was forty-six years old; Mr. Peterson was sixty-five. The couple had been married for approximately twenty-five years. *843 They had two adult sons. Mrs. Peterson had previously worked part-time cleaning new homes for initial occupancy. Mr. Peterson had retired from a utility company, but he kept busy as an ordained elder and pastor serving small churches in various locations.
Mr. Peterson testified that he and his wife shared an active lifestyle before the accident. Mr. Peterson described Mrs. Peterson as a “workaholic” who did housework and worked in their yard. The Pe-tersons enjoyed time spent together fishing, attending a variety of church events, and travelling to visit their two sons. After the accident, Mrs. Peterson became unable to perform many of the tasks she had previously performed around the house. The pain of her injuries limited her willingness to travel to the events she had previously enjoyed with her husband. In Mr. Peterson’s words, his wife was “not as happy as she used to be. She gets short-tempered sometimes and she gets depressed.” Finally, Mr. Peterson testified that the accident had resulted in a substantial decrease in the frequency with which he and Mrs. Peterson had sexual relations.
In turn, Mrs. Peterson testified that the accident had limited her ability to do housework. After the accident, Mr. Peterson assisted her with many tasks that she had previously performed on her own. Mrs. Peterson confirmed Mr. Peterson’s testimony that the effects of the accident had limited her ability to travel to the kind of events and activities that she had previously enjoyed with her husband. Mrs. Peterson also testified that although Mr. Peterson had been patient and helpful, the pain associated with her injuries had caused her to become “short with him.” As Mrs. Peterson put it, “It’s affected me to the point where I’ve pulled away from him.”
As her husband did, Mrs. Peterson testified at trial that her injuries sustained in the accident had caused a decrease in the frequency with which the couple engaged in sexual relations. Sun State’s counsel successfully impeached Mrs. Peterson on this point. In her deposition, when asked “[a]nd do you attribute the decreased level to the injuries from the accident,” Mrs. Peterson had answered, “no.” The only explanation Mrs. Peterson offered for the discrepancy between her trial testimony and her deposition on this point was that she did not remember making the statement in the deposition.
In a detailed review of the evidence during his closing argument, the only reference made by Sun State’s counsel to Mr. Peterson’s claim for loss of consortium was to the discrepancy between Mrs. Peterson’s trial testimony and her deposition on the cause of the decrease in the level of the couple’s sexual activity after the accident. This was a fair observation. But the interests involved in a claim for loss of consortium involve far more than sexual relations. See Albritton, 382 So.2d at 1268 n. 2. In this case, the Petersons presented evidence of the following facts: (1) Mrs. Peterson’s level of activity had decreased after the accident; (2) Mr. Peterson was now doing the household chores that Mrs. Peterson used to do; (3) after the accident, Mr. Peterson began to help Mrs. Peterson in her part-time job cleaning newly constructed residences; (4) Mrs. Peterson ultimately had to quit her job because she was no longer able to do the work; (5) Mrs. Peterson had become more short-tempered with her husband and had begun to pull away from him emotionally; (6) it had become difficult for Mrs. Peterson to travel on family vacations or participate in family events, such as attending her sons’ football games; and (7) it had become impossible to do some things, such as go *844 ing out in the family’s canoe or going fishing.
We acknowledge that there were one or two points of conflict in the evidence. For example, about seven or eight months after Mrs. Peterson was rear-ended by the Sun State truck, she drove herself to New York to visit her son and her daughter-in-law. But this fact, taken out of context, paints a distorted picture. Immediately before the trip to New York, Mrs. Peterson had learned that her daughter-in-law had gone into labor. Mrs. Peterson insisted on going to New York immediately to be present for the arrival of the new baby and decided to drive, despite her husband’s protestations. Mrs. Peterson testified that she was in considerable discomfort during the trip and had to take medication for her pain. There was no evidence to the contrary. Throughout the trip, Mrs. Peterson had regular telephone contacts with Mr. Peterson. When Mrs. Peterson arrived in Washington, D.C., she called her husband because she was in pain and panic-stricken. Mr. Peterson followed his wife to New York by plane, and he drove back to Florida with her. In short, Mrs. Peterson’s unplanned trip to New York was clearly imprudent. But Mrs. Peterson’s road trip to New York does not support the conclusion that she was not seriously injured in the collision with the truck driven by Sun State’s employee, nor does it disprove Mr. Peterson’s consortium claim.
There was also evidence that Mrs. Peterson was involved in an accident involving a deer on the return trip from New York. But the evidence demonstrated that the collision with the deer was a relatively minor event for Mr. and Mrs. Peterson. The deer was small, the damage to their car was minimal, and the Petersons were not seriously hurt. There was no evidence to the contrary.[1] By contrast, in the rear-end collision with the Sun State truck, Mrs. Peterson’s seat back reclining mechanism was broken, the frame of her vehicle was damaged, and the insurance company declared the vehicle a total loss. In addition, the tires of the truck driven by the Sun State employee were blown out, the air bag deployed, steam or smoke was observed coming from the engine compartment, and it too was declared a total loss. In short, this was no mere fender-bender. And, although Mrs. Peterson did not seek medical attention immediately, she did so a few days later. A delay of several days in seeking medical attention following a rear-end collision — such as the one in this case — is not uncommon. And the evidence showed that on the night of the accident, Mrs. Peterson began to complain of pain, and she “couldn’t hardly get out of bed” the next day.
Before the accident, Mrs. Peterson was employed by a building contractor to clean new homes. In fact, she continued to work at this job for several months after the accident. But here again two additional facts concerning Mrs. Peterson’s continued employment provide a more complete picture of the situation. First, Mrs. Peterson’s employer testified that Mrs. Peterson’s ability to do her job changed drastically after the accident. In the employer’s words: “It was difficult for her. Her back bothered her. I mean, you could tell she just ... moved slower[. S]he was not able to work like she did before.... [S]he was in pain.” Mrs. Peterson’s employer also *845 testified that after a few months Mrs. Peterson was unable to do the work and that she had to resign. The employer’s testimony on these points was uncontradicted. Notably, about a month before her ill-advised trip to New York, Mrs. Peterson had resigned from her employment because of her continuing inability to do the work. Second, after the collision with the Sun State truck, Mr. Peterson came to the job sites with his wife and helped her do the work. Mrs. Peterson had not previously required help from Mr. Peterson to do her job.
In summary, the undisputed facts showed that following the accident, Mrs. Peterson’s relationship with her husband deteriorated, her ability to contribute to the couple’s income by working outside the home stopped, she became unable to accomplish common household chores without the assistance of Mr. Peterson, and her injuries were significant enough that she underwent a series of injections and ultimately decided to seek surgical treatment. After a thorough review of the record, we conclude that Mr. Peterson presented substantial, undisputed evidence sufficient to require an award of at least nominal damages for his loss of consortium claim. See Waldron v. Dorsey, 585 So.2d 403, 404 (Fla. 1st DCA 1991) (reversing for a new trial on loss of consortium claims even though some of the evidence was conflicting where there was also substantial, undisputed evidence showing that at least nominal damages should have been awarded); see also Noah v. Threlkeld, 543 So.2d 431, 432 (Fla. 2d DCA 1989) (holding that the plaintiffs “were at least entitled to nominal damages in view of their unrebut-ted testimony on [their] claims” for loss of services and consortium); Big Lots Stores, Inc., 18 So.3d at 1068 (holding that the evidence presented on the plaintiff’s claim for loss of consortium was sufficient to “require an award of at least nominal damages”); Tavakoly, 998 So.2d at 1185 (“[I]t is ... well settled that where sufficient undisputed evidence is presented on a consortium claim that would require an award of at least nominal damages, a zero verdict is inadequate as a matter of law.”); Kirkland v. Allstate Ins. Co., 655 So.2d 106, 108 (Fla. 1st DCA 1995) (holding that evidence of a husband’s hospitalization for three days and the difficulty that he had experienced in sleeping and participating in family activities required reversal of the trial court’s denial of a motion for new trial on a loss of consortium claim); Frye, 568 So.2d at 986 (holding that uncontradicted evidence of a husband’s inability to participate in the leisure activities he and his wife had both enjoyed before the accident and of the necessity for the wife to assume greater responsibility in raising their children and to help the husband in his own care and in doing household chores required reversal for a new trial for damages for loss of consortium).
The trial court could have properly denied the motion for a new trial on Mr. Peterson’s claim for loss of consortium if there had been evidence in the record from which the jury could have concluded that the adverse effects on the Petersons’ marital life were attributable to causes other than the accident. See Ballagas v. Scott, 589 So.2d 334, 335 (Fla. 1st DCA 1991); see also Tieche v. Panlener, 504 So.2d 49, 50 (Fla. 2d DCA 1987) (affirming the trial court’s denial of a new trial on the wife’s claim for loss of consortium when there was evidence from which the jury could have concluded that the deterioration in the parties’ lifestyle was caused by the husband’s disease rather than by the accident for which the claim was made); Hagens v. Hilston, 388 So.2d 1379, 1381 (Fla. 2d DCA 1980) (reversing an order granting a new trial on the wife’s claim for loss of consortium when there was evi *846 dence from which the jury could have concluded that the difficulties in the parties’ relationship were caused by their immature attitudes rather than by the accident for which the claim was made). But this case is unlike Tieche and Hagens. Here, despite the conflicts in the evidence asserted by Sun State concerning the true extent of Mrs. Peterson’s injuries, there was no evidence that would link the deterioration in the Petersons’ marital relationship to anything other than the accident. See Jones, 901 So.2d at 931 (“When the claiming spouse presents evidence that is substantial, undisputed, and unrebutted concerning the impact the injury had on the marital relationship, such spouse is entitled to receive at least nominal damages for loss of consortium.”).
V. CONCLUSION
For these reasons, the trial court erred in denying the Petersons’ motion for a new trial on Mr. Peterson’s claim for loss of consortium. See Lofley, 527 So.2d at 903; Albritton, 382 So.2d at 1268-69; Big Lots Stores, Inc., 18 So.3d at 1068; Tavakoly, 998 So.2d at 1185-86; Jones, 901 So.2d at 931-32; Frye, 568 So.2d at 986. Accordingly, we reverse the order denying the motion for a new trial in part and remand for a new trial limited to the issue of the amount of damages on Mr. Peterson’s claim for loss of consortium.
Reversed and remanded.
LaROSE, J., Concurs.
BLACK, J., Dissents with opinion.

. Counsel for Sun State argued that because Mrs. Peterson sought medical attention after the accident involving the deer, her medical problems must have stemmed from that accident. However, this argument was based on speculation, not on any evidence presented at trial.