NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BRANDON OROSCO and JENNIFER OROSCO, husband and wife,
individually, and as parents and next friends of KAYLEN OROSCO,
MARISSA OROSCO, and SILAS OROSCO,
*Plaintiffs/Appellees*,

*v.*

MARICOPA COUNTY SPECIAL HEALTH CARE DISTRICT, a body
politic for and dba MARICOPA INTEGRATED HEALTH SYSTEM,
*Defendant/Appellant*.

No. 1 CA-CV 15-0580
FILED 2-2-2017

Appeal from the Superior Court in Maricopa County
No. CV2012-004724
The Honorable John Christian Rea, Judge

**AFFIRMED IN PART, VACATED AND REMANDED IN PART**

COUNSEL

Harris Powers & Cunningham PLLC, Phoenix
By Frank I. Powers
*Counsel for Plaintiffs/Appellees*

Slattery Petersen, PLLC, Phoenix
By Elizabeth A. Petersen
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Jon W. Thompson and Chief Judge Michael J. Brown joined.

---

**J O H N S E N**, Judge:

**¶1** The Maricopa County Special Health Care District ("MCSHCD") appeals the superior court's orders denying judgment as a matter of law and a new trial or remittitur and imposing costs and sanctions. For the following reasons, we affirm in part and vacate and remand in part.[1]

## FACTS AND PROCEDURAL BACKGROUND

**¶2** Brandon Orosco sought treatment at MCSHCD for severe burns. During the insertion of a central line, MCSHCD's medical resident negligently left a two-foot long guidewire in Brandon's artery and failed to inform her supervising physician or the radiologists when she could not locate the guidewire after the procedure.

**¶3** About six weeks later, Brandon presented with excruciating pain; on imaging, the guidewire was seen running from his chest down to his right thigh. Doctors attempted several times over the course of three days to remove the wire, which had embedded in Brandon's femoral artery. During that time, Brandon suffered severe groin pain and doctors warned him movement could be fatal. After the wire was removed, Brandon's femoral artery collapsed, necessitating stent placement. The stent became blocked and infected, requiring bypass surgery that eventually failed. Ultimately, doctors removed Brandon's femoral artery.

**¶4** Brandon was 34 at the time and was expected to live about another 42 years. Experts testified that as a result of the guidewire incident, Brandon now suffers emotional distress, PTSD and major depression. He

---

[1] The District also argues the superior court erred by awarding sanctions under Arizona Rule of Civil Procedure 68(g) calculated from the date of the first of the Oroscos' two offers of judgment. In a separate opinion, we affirm the court's decision to impose sanctions calculated from the date of the first offer. *See* Arizona Rule of Civil Appellate Procedure 28(c).

tried to commit suicide, and there is a chance he might lose his leg. Further, he has nerve damage, permanent scars, difficulty walking and takes pain medication daily.

¶5           Before the close of evidence at trial, MCSHCD moved for judgment as a matter of law on Brandon's children's loss of consortium claim, which the superior court denied.

¶6           The jury rendered a $4.25 million verdict in favor of Brandon and his family, allocating 99% of fault to MCSHCD and 1% fault to the codefendant radiology group. The superior court denied MCSHCD's motion for new trial or remittitur and awarded taxable costs and sanctions to the Oroscos.

¶7           We have jurisdiction over this timely appeal pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-2101(A)(1), (5)(a) (2017) and -2102(B) (2017).[2]

## DISCUSSION

### A.     Denial of Motion for Judgment as a Matter of Law.

¶8           MCSHCD argues the superior court erred by denying its motion for judgment as a matter of law on the children's claim for loss of consortium because there was no evidence of damage to the parent-child relationship.

¶9           We review *de novo* the denial of judgment as a matter of law. *Glazer v. State*, 237 Ariz. 160, 167, ¶ 29 (2015). The superior court should grant judgment as a matter of law when there is no issue of fact and the movant is entitled to judgment as a matter of law. *Id.* We review the evidence in the light most favorable to the children as the non-moving parties. *Id.* at ¶ 28. If reasonable people could differ about the conclusions drawn from the evidence, the court should deny the motion. *Id.*

¶10          A child claiming loss of parental consortium must demonstrate that the injury caused damage to the normal parent-child relationship. *See Villareal v. State Dep't of Transp.*, 160 Ariz. 474, 481 (1989); *Miller v. Westcor Ltd. P'ship*, 171 Ariz. 387, 395 (App. 1991). If the superior court determines that "the threshold of a significant interference with the normal relationship between parent and child has been met," the jury

---

[2]          Absent material revision after the relevant date, we cite a statute's current version.

"determines the question of recovery or the amount recoverable based on the degree of that interference." *Pierce v. Casas Adobes Baptist Church*, 162 Ariz. 269, 272 (1989).

¶11     Brandon, his wife, and her sister all testified that after Brandon suffered injury due to the guidewire, Brandon and his children no longer enjoyed physical activities together to the same extent as before. The three children are all school-age teenagers. Viewing this evidence in the light most favorable to the children, reasonable jurors could find the negligence by MCSHCD interfered with the children's normal parent-child relationships with Brandon.

¶12     Citing *Peterson v. Sun State International Trucks, LLC*, 56 So. 3d 840 (Fla. Dist. App. 2011), MCSHCD argues *the children* needed to testify about how the guidewire event and their father's resulting injuries affected their relationship with their father. In *Peterson*, both the husband who claimed loss of consortium and his wife testified about the damage to their marital relationship. *Id.* at 843. *Peterson* does not hold that a party claiming loss of consortium must testify. Under Arizona law, the jury may draw a negative inference when a party declines to testify in a civil case. *Melissa W. v. Dep't of Child Safety*, 238 Ariz. 115, 116-17, ¶ 5 (App. 2015). There is no requirement in Arizona law, however, that children have to testify in support of a loss of consortium claim. Thus, the superior court properly denied MCSHCD's motion for judgment as a matter of law.

## B.     Denial of Motion for New Trial or Remittitur.

¶13     We review for abuse of discretion the denial of a motion for new trial or remittitur. *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 53, ¶ 12 (1998). We view the evidence in the light most favorable to upholding the jury's verdict. *Id.* at ¶ 13. We will affirm if "any substantial evidence exists permitting reasonable persons to reach such a result." *Id.*

### 1.     Evidentiary rulings.

#### a.     Standard-of-care testimony.

¶14     MCSHCD argues the superior court erred in allowing the Oroscos' expert witness to testify MCSHCD breached the standard of care because MCSHCD conceded negligence.

¶15     Regardless of MCSHCD's admission, its fault was at issue at trial because the codefendant radiology group denied negligence and causation and the defendants disputed comparative fault. Fault includes

4

negligence. A.R.S. § 12-2506(F)(2) (2017). In determining comparative fault, the jury compares the relative fault of all codefendants. *Id.* § 12-2506(B) ("[T]he trier of fact shall consider the fault of all persons who contributed to the alleged injury."); *id.* § 12-2506(C) (trier of fact shall determine and apportion the "relative degree of fault" of the claimant, the defendants and the nonparties); *Piner v. Super. Ct.*, 192 Ariz. 182, 187-89, ¶¶ 20-25, 30 (1998) (A.R.S. § 12-2506(B) does not "require limiting liability by apportioning damages but by apportioning fault"); *Zuern v. Ford Motor Co.*, 188 Ariz. 486, 491-92 (App. 1996). Thus, the superior court did not err in admitting evidence bearing on MCSHCD's fault, including evidence of how MCSHCD allegedly breached the standard of care.

¶16 MCSHCD also argues the superior court improperly permitted duplicative expert standard-of-care testimony. Contrary to MCSHCD's argument, the record shows that only the Oroscos' standard-of-care expert testified that the resident deviated from the standard of care.

¶17 Finally, MCSHCD challenges the qualifications of the Oroscos' standard-of-care expert. We need not decide this issue because MCSHCD admitted its resident deviated from the standard of care and there is no dispute that it is negligent to leave a guidewire in a patient and to fail to notify appropriate individuals after doing so.

### b. Preclusion of evidence about the origin of Brandon's burns.

¶18 Before trial, the superior court ruled that because Brandon's comparative fault was not at issue, it was irrelevant that Brandon had caused the fire in which he was burned. On the record, the court stated, "Certainly, the burns, the traumatic events, all of that is relevant to claim psychological damages, but evidence of how the fire started and casting fault on Mr. Orosco is not relevant."

¶19 At the conclusion of the evidence, MCSHCD filed an offer of proof, asking to offer excerpts of Brandon's deposition testimony and his medical records and to recall an expert witness, all to show that Brandon suffered nightmares of the fire and had related anxiety and mental trauma related to the fire. MCSHCD argued the court's pretrial ruling unfairly had prevented it from cross-examining the expert about the mental distress Brandon suffered from the fire. After reviewing the offer of proof, the court observed that it was "not sure that the pretrial ruling precluding comparative fault was quite as broad" as MCSHCD had understood. The court continued, "There was always the burns and the nature of the burns

were always fair game, and if asked, we could have probably gone into some of these issues as long as nobody was casting fault on Mr. Orosco."

¶20 Notwithstanding MCSHCD's argument, however, it indeed cross-examined the expert witness about Brandon suffering psychologically due to his burns. Moreover, as the court indicated after reviewing the offer of proof, its pretrial ruling did not bar MCSHCD from offering proof that Brandon suffered mental distress as a result of his burns. In any event, because the expert testified about those psychological injuries, no ruling by the court affected MCSHCD's substantial rights. Ariz. R. Evid. 103(a).

### c. Admission of evidence of the risk of amputation.

¶21 MCSHCD argues the superior court erred in permitting evidence and argument that negligence by MCSHCD caused Brandon an increased risk of leg amputation.

¶22 The Oroscos' vascular surgery expert testified that because the guidewire had been embedded in Brandon's femoral artery for five or six weeks, Brandon developed an infection necessitating removal of the entire artery. The expert also testified that although remaining collateral arteries provide blood flow to Brandon's leg, Brandon is at a higher risk than a normally healthy person for developing future infection that might require his leg to be amputated. Brandon's treating surgeon testified the chance of Brandon losing his leg is "very low" but "more so than the general population."

¶23 Relying on *Thompson v. Sun City Community Hospital, Inc.*, 141 Ariz. 597 (1984), MCSHCD argues this evidence did not rise to the threshold level of "increased risk of harm" necessary to establish causation, and contends the superior court erred in denying its motion for new trial on this basis.

¶24 MCSHCD confuses causation with damages. In the ordinary negligence case, a plaintiff must prove the defendant probably caused his or her injury. *Benkendorf v. Advanced Cardiac Specialists Chartered*, 228 Ariz. 528, 530, ¶ 8 (App. 2012). In a limited class of cases relying on the "loss of chance" theory of causation, a plaintiff only needs to show that negligence "increased the risk" of harm. *Thompson*, 141 Ariz. at 605-08. Here, the evidence of risk of amputation was not offered to prove MCSHCD caused Brandon harm, but rather as an element of damages.

¶25        "Greater susceptibility to physical harm has been recognized as an element of damage[s] in Arizona." *Kenyon v. Hammer*, 142 Ariz. 69, 75 (1984) (increased risk of future fetal fatality is "damage which will sustain a cause of action in tort").  Moreover, an increased risk of future harm is compensable when accompanied by physical deterioration.  *See Felder v. Physiotherapy Assocs.*, 215 Ariz. 154, 166, ¶ 54 (App. 2007) (plaintiff could recover for anxiety over his less than 1% chance of loss of vision).

¶26        The jury found MCSHCD liable for failing to remove the guidewire after the procedure.  The evidence showed that as a result of MCSHCD's negligence, Brandon suffered serious physical injury and has an increased risk of leg amputation compared to the average person.  The superior court did not err in denying the motion for new trial due to the admission of amputation-risk evidence.

## 2.    Closing argument.

### a.        "Conscience of the community" statement.

¶27        Although no claim for punitive damages was before the jury, MCSHCD argues that the Oroscos' lawyer improperly suggested the jury should punish MCSCHD by its damage verdict.  It points to comments by the Oroscos' lawyer during closing argument that the jury should "keep in mind you're the conscience of the community" and should "tell them with your verdict that our community deserves better."

¶28        In support for its contention that these comments improperly influenced the jury, MCSHCD cites *Maercks v. Birchansky*, 549 So. 2d 199 (Fla. App. 1989), and *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So. 2d 31 (Miss. 2004).  The court in *Maercks* reversed a medical malpractice award due to a long list of improper statements by the plaintiff's lawyer, including, but not limited to: "[C]ounsel for plaintiff three times asked the jury as the 'conscience of the community' to 'send a message with its verdict,' and additionally commented on the expense of past medical bills when there was no claim for past medical expenses as damages, made derogatory personal remarks about opposing counsel, and asserted his personal opinion as to the credibility of a witness, the justness of his client's cause and the perfidy of the defendant."  549 So. 2d at 200.  And in *Janssen*, plaintiffs' counsel not only asked the jury to "send a message," but also repeatedly told the jury that the defendant had lied to and defrauded the public, notwithstanding the court's prior dismissal of a claim for misrepresentation.  878 So. 2d at 62.

¶29 The comments by Oroscos' lawyer on which MCSHCD bases its argument came at the end of a passage in which counsel called the jury's attention to each item on a verdict form. Counsel concluded:

> When you answer these questions, keep in mind you're the conscience of the community. You're the one that needs to consider all the harm in the lives that have been forever changed. . . . What happens to Mr. Orosco is up to you. Make sure the debt the defendants have created is paid in full. Tell them with your verdict that they seriously harmed this family. Tell them with your verdict that our community deserves better.

We do not agree that these comments effectively asked the jury to punish MCSHCD. Nothing similar to the improprieties in *Maercks* or *Janssen* occurred here. Taken as a whole, counsel's statements properly urged the jury to consider the verdict forms. *See Cota v. Harley Davidson*, 141 Ariz. 7, 15 (App. 1984) (rejecting contention that telling the jury to "send a message" was an improper request for punitive damages).

### b. Comment on MCSHCD's failure to call an independent medical examiner.

¶30 MCSHCD argues the court erred by denying its motion to preclude any reference to the fact that it decided not to offer testimony by an independent medical examiner that it had retained to examine Brandon. MCSHCD argues Brandon's testimony about the examination and his lawyer's reference in closing argument to the fact that MCSHCD failed to call the examiner improperly permitted the jury to draw an adverse inference.

¶31 MCSHCD relies on *Gordon v. Liguori*, 182 Ariz. 232 (App. 1995), to support its argument that Arizona law precludes comment on the defense's failure to call the examiner. The jury may draw an adverse inference from the failure to call a witness "only under limited circumstances." *Gordon*, 182 Ariz. at 236. But Brandon testified that the expert's examination caused him pain; he did not go on to point out that the examiner was not a witness at trial. As to the closing argument comment, under *Gordon*, relevant considerations are whether the witness is under the control of the party that failed to call the witness to testify, whether the party naturally would call the witness to testify if that testimony would be favorable to the party, and "whether the existence or nonexistence of a certain fact is uniquely within the knowledge of the witness." *Id.*; *see also*

*Ponce v. Indus. Comm'n*, 120 Ariz. 134, 136 (App. 1978). When the particular perspective is uniquely within the witness's knowledge, the jury may draw an adverse inference from the failure to testify. *See Melissa W.*, 238 Ariz. at 117, ¶ 8. The first two factors clearly weigh in favor of allowing the argument; moreover, because only the examiner knew the details and results of his examination of Brandon, that factor also weighs against MCSHCD's contention that the court erred by denying its motion to preclude. *See id.*

## C.     Jury Instructions.

**¶32**        MCSHCD argues the superior court erred in failing to instruct the jury that A.R.S. § 12-820.04 (2017) did not allow an award of punitive damages. The jury, however, was properly instructed on the nature and elements of the damages for which the Oroscos were entitled to seek compensation. MCSHCD cites no authority for the proposition that under these circumstances, the jury must be told it should not award punitive damages or otherwise punish the defendant by its verdict.

**¶33**        MCSHCD also argues the superior court erred by not instructing the jury that it was not liable for damages arising from Brandon's burns and a subsequent motor vehicle accident. MCSHCD did not request a jury instruction related to the burns and the motor vehicle accident. The superior court properly instructed the jury that Brandon was not entitled to compensation for physical conditions pre-existing MCSHCD's fault and that it must decide the amount of money that would compensate the Oroscos for the damages caused by MCSHCD's fault. The superior court did not err in failing to a give a more specific jury instruction.

## D.     Damages Award.

**¶34**        MCSHCD contends a new trial or remittitur was warranted because the evidence did not support the $4.25 million verdict.

**¶35**        The jury decides the appropriate amount of damages. *Creamer v. Troiano*, 108 Ariz. 573, 576 (1972). If the verdict is "so unreasonable and outrageous as to shock the conscience of this court" and derives from passion or prejudice, we will remand for a new trial. *Stallcup v. Rathbun*, 76 Ariz. 63, 65-67 (1953). A large verdict does not necessarily derive from passion or prejudice. *Hutcherson*, 192 Ariz. at 57, ¶ 36. If the verdict signals "an exaggerated measurement of damages," remittitur is appropriate. *See Stallcup*, 76 Ariz. at 65-67. On review, reference to other jury verdicts is "dangerous" because no two persons, injuries or juries are alike. *Wry v. Dial*, 18 Ariz. App. 503, 514-15 (1972); *see also Ahmad v. State*,

240 Ariz. 381, 385-86, ¶¶ 12-16 (App. 2016).  Instead, we examine whether the evidence supports the damages award.  *See Ahmad*, 240 Ariz. at 385, ¶ 10; *In re Estate of Hanscome*, 227 Ariz. 158, 162, ¶ 14 (App. 2011).

**¶36**        MCSHCD essentially asks us to reweigh the evidence, which we cannot and will not do.  *See Creamer*, 108 Ariz. at 576.  In particular, in considering the damages evidence supporting Brandon's pain and suffering, we are not shocked by the amount of the verdict, nor is the verdict an exaggerated measurement of damages.  On this record, the superior court did not err in denying a new trial or remittitur based on the damages award.

**E.        Cost Award and Sanctions.**

**1.        Costs.**

**¶37**        Under A.R.S. § 12-341 (2017), the superior court must award costs to the successful party.  *Graville v. Dodge*, 195 Ariz. 119, 130, ¶ 52 (App. 1999).  We review a cost award for abuse of discretion.  *See id.* at ¶ 53.

**a.        Verification.**

**¶38**        MCSHCD argues the superior court erred in awarding costs in the absence of a timely verification by the Oroscos in support of their cost claim.  Although the requesting party must file a verified statement of costs within ten days after judgment, the superior court may extend the time for compliance for good cause.  A.R.S. § 12-346(A) (2017).

**¶39**        When the Oroscos timely submitted their statement of costs, they omitted the requisite accompanying verification, but they submitted the verification with their reply.  We infer from the superior court's cost award that it found good cause to extend the time to submit the verification.  *See Wippman v. Rowe*, 24 Ariz. App. 522, 525 (1975).  In the absence of any argument to the contrary, the superior court did not err in extending the time for compliance.

**b.        Specific objections to costs.**

**¶40**        In a separate opinion, we hold the superior court did not err by awarding the Oroscos the costs of service of process.  MCSHCD also challenges the award of costs for video deposition fees, contending the Oroscos only could recover costs for a deposition transcript/court reporter or a deposition video/videographer, but not both.  The superior court has discretion to award both sets of costs, "[b]ased on an individualized

determination of reasonableness and necessity." *Reyes v. Frank's Serv. & Trucking, LLC*, 235 Ariz. 605, 611, ¶ 23 (App. 2014). We infer from the superior court's ruling that it determined both sets of costs were reasonable and necessary. *See Wippman*, 24 Ariz. App. at 525. Because there is evidence supporting the reasonableness and necessity of using both methods for the taking of depositions, the superior court did not abuse its discretion in awarding costs for both memorialization methods.

**¶41** Next, MCSHCD challenges the award of costs for copies of deposition transcripts sent to experts. Because the cost of deposition transcript copies is recoverable as a "cost incidental to the taking of the deposition," we reject MCSHCD's argument. *Visco v. First Nat'l Bank of Ariz.*, 3 Ariz. App. 504, 508 (1966).

**¶42** MCSHCD also challenges the award of costs for private mediation fees. Recoverable costs include "[o]ther disbursements that are made or incurred pursuant to an order." A.R.S. § 12-332(A)(6) (2017); *see also Graville*, 195 Ariz. at 130, ¶ 54 (affirming assessment of court-appointed physician witness fees against respondent as a taxable cost under A.R.S. § 12-332(A)(6) because the payment of fees by the prevailing party was made pursuant to court order). Here, because the superior court ordered the parties to participate in private mediation, the superior court did not err in awarding costs for private mediation fees. *See Graville*, 195 Ariz. at 130, ¶ 54.

**¶43** MCSHCD also challenges other expenses claimed as taxable costs. The Oroscos claimed $4,000 billed by one expert and $4,500 billed by another for the time spent in traveling to Arizona for the trial. Fees paid to an expert witness for travel time, however, are not taxable as witness fees under § 12-332(A) and the version of Arizona Rule of Civil Procedure 54(f)(2) in effect at the time. *Foster v. Weir*, 212 Ariz. 193, 195, ¶ 8 (App. 2006). Similarly, the Oroscos cite no authority for their cost claim for $721 in travel expenses for another expert. Further, we find no authority, and the Oroscos cite none, under which $153.55 in meal expenses incurred during a deposition and a settlement conference are taxable costs. Because the Oroscos could only recover costs pursuant to statutory authorization, *Ahwatukee Custom Estates Management Ass'n v. Bach*, 193 Ariz. 401, 402, ¶ 6 (1999), on remand, the superior court should vacate the portion of the cost award relating to meals, experts' travel time and experts' travel expenses.

### 2. Rule 68 sanctions.

**¶44** We review a sanctions award under Arizona Rule of Civil Procedure 68 for abuse of discretion. *Berry v. 352 E. Va., L.L.C.*, 228 Ariz. 9, 15, ¶ 31 (App. 2011). In a separate opinion, we reject the argument by MCSHCD that the superior court erred as a matter of law by calculating sanctions from the date of the Oroscos' first offer of judgment pursuant to Rule 68.

**¶45** MCSHCD also raises other issues concerning the superior court's sanction award. Under Rule 68(g), the Oroscos were entitled to be reimbursed their "reasonable expert witness fees." The Oroscos sought sanctions under Rule 68(g) for the fees paid to several expert witnesses, including those whose travel time we addressed as claimed taxable costs, *supra* ¶ 43. Although expert fees incurred during travel are not recoverable as a taxable cost pursuant to § 12-332, they may be recovered as expert fees under Rule 68(g). *Levy v. Alfaro*, 215 Ariz. 443, 445, ¶ 14 (2007). We cannot discern from the record how the superior court's sanctions award treated these fee claims. On remand, the court may take whatever additional briefing or evidence is required to sort out the claimed fees.

**¶46** MCSHCD otherwise argues the superior court erred by doubling some of the Oroscos' expert witness fees as a sanction under Rule 68(g). At the time relevant to this appeal, Rule 54(f)(2) provided that reasonable fees paid to expert witnesses *for testifying at trial* in a medical malpractice case are "witness fees" as set forth in A.R.S. § 12-332(A)(1) and are considered a taxable cost. In turn, Rule 68(g) requires the doubling of taxable costs incurred after making the offer of judgment as a sanction for rejecting an offer. The superior court thus did not err to the extent it awarded the Oroscos double the amount they paid in fees to expert witnesses for testifying at trial as a sanction pursuant to Rule 68.

**¶47** There is no authority under Rule 68, however, for doubling any other fees incurred by expert witnesses. *See Foster*, 212 Ariz. at 195, ¶ 8 (Rule 54(f)(2) did not apply to expert fees other than fees incurred for testifying at trial). Therefore, on remand, the court should reconsider its sanctions award to ensure that the sanctions it awarded under Rule 68(g) did not include improper double expert witness fees.

**¶48** Finally, MCSHCD also challenges the sanction award based on fees paid to expert Jared Armstrong because he was not timely disclosed and did not testify at trial. Rule 68(g) provides that an offeree must pay as a sanction reasonable expert witness fees. Rule 68(g) does not limit fees

only to experts testifying at trial.  *See Levy*, 215 Ariz. at 445, ¶ 14 (rejecting the argument that a party can only recover expert fees under Rule 68 for time spent testifying at trial); *Scottsdale Ins. Co. v. Cendejas*, 220 Ariz. 281, 289, ¶¶ 39-42 (App. 2009) (affirming Rule 68 sanctions based on expert fees paid to withdrawn expert).  The record shows the Oroscos incurred an expert witness fee for Armstrong after making the Rule 68 offers.  Thus, the superior court did not abuse its discretion by awarding sanctions based on fees paid to Armstrong.

## CONCLUSION

**¶49**　　　　For the foregoing reasons, we affirm the judgment except that we vacate, in part, the superior court's award of taxable costs and sanctions under Rule 68(g).  On remand, the superior court shall reconsider the items addressed *supra* ¶¶ 43, 45-47 and modify its award, if necessary, consistent with this decision.  Contingent on its compliance with Arizona Rule of Civil Appellate Procedure 21, we grant MCSHCD the costs it incurred on appeal that it can demonstrate relate to those taxable costs and sanctions.



AMY M. WOOD • Clerk of the Court
FILED:  AA